RAMÓN MONTANER, en su carácter de ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* LA COMISIÓN INDUSTRIAL DE PUERTO RICO, recurrida, y ANTONIO R. MATOS, ET AL., peticionarios ante la Comisión Industrial.

Núm. 37.—*Sometido:* Noviembre 15, 1938. *Resuelto:* Enero 13, 1939.

56

*Hon. Procurador General B. Fernández García, E. de Aldrey, Pro-
curador General Auxiliar y Víctor J. Vidal González y Luis
Negrón Fernández,* abogados éstos del Fondo del Estado, abogados
del recurrente; *M. León Parra,* abogado de la recurrida; *Virgilio
Brunet,* abogado de los peticionarios ante la Comisión Industrial.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del
tribunal.

El Administrador del Fondo del Seguro del Estado au-
mentó para el año 1937–38 a $5.85 el tipo de $3.98 que rigió

durante los años 1935–36 y 1936–37 para la clasificación 0030 (cultivo de caña). Antonio R. Matos y otros patronos que se consideraron perjudicados por el aumento del tipo radicaron una solicitud de revisión en la Comisión Industrial. Compareció el Administrador del Fondo del Seguro del Estado, radicó las alegaciones que estimó procedentes, y, después de varios meses durante los cuales la Comisión en sucesivas sesiones oyó los argumentos de los abogados y recibió la prueba testifical y documental que una y otra parte le presentaron, dictó una resolución, con fecha 26 de mayo de 1938, cuya parte dispositiva dice así:

"Por los motivos antes expuestos, resolvemos que debe rebajarse el tipo de la clasificación 0030 de $5.85 a $4.49 durante el año 1937–38 por cada $100 de jornales pagados, debiendo tomarse en consideración nuestra disposición referente a la distribución del déficit, al fijar los tipos para el año 1938–39; y en consecuencia ordenamos al Sr. Administrador del Fondo del Seguro del Estado que dicho exceso, calculado desde la fecha en que fué radicada la petición en este caso, sea descontado de las primas o contribuciones que hayan de recaudarse en el futuro a los patronos recurrentes, todo de acuerdo con lo dispuesto en el apartado tercero del artículo 24 de la Ley núm. 45, aprobada el 18 de abril de 1935."

Solicitó el Administrador la reconsideración de la ameritada resolución de 26 de mayo último y le fué denegada el 13 de junio siguiente, por lo que el 28 del mismo mes radicó en este Tribunal una solicitud de revisión que consta de cincuenta y seis páginas.

Alega el recurrente que el procedimiento seguido ante la Comisión Industrial es nulo *ab initio*, siendo nula también la resolución recurrida, por los siguientes fundamentos:

"A. Porque en el mismo no se le dió oportunidad de intervenir, y no fué citado ni notificado en forma alguna para que interviniera, y no se le convocó para, ni permitió que actuara, en las vistas públicas celebradas, al Hon. Comisionado del Trabajo de Puerto Rico, siendo como es dicho funcionario miembro *ex-officio* de la Comisión Industrial en virtud de la ley número 15 de 14 de abril de 1931

(Leyes de 1931, pág. 169) denominada 'Ley Orgánica del Departamento del Trabajo', con los mismos derechos y prerrogativas que los demás miembros y con mayor interés y responsabilidad que éstos en el desarrollo y desenvolvimiento del servicio de compensaciones a obreros por virtud de las facultades conferidas y los deberes a él impuestos por la Ley Orgánica de Puerto Rico.

"B. Porque, independientemente y además de su derecho a intervenir en el presente caso en virtud de la Ley antes citada, la intervención del Comisionado del Trabajo era necesaria e indispensable en el presente caso, como lo es en todo caso de revisión de primas, para darle validez al procedimiento seguido por la Comisión Industrial, el cual es nulo, toda vez que al no darle intervención a dicho funcionario, se ha hecho anticonstitucional en su aplicación y funcionamiento la ley número 45 del 18 de abril de 1935, bajo la cual ilegalmente ha venido actuando en este caso la Comisión Industrial, por constituir una abierta violación a los artículos 37 (último párr.) y 18 (a) de la Ley Orgánica de Puerto Rico.

"C. Porque la ley número 45 del 18 de abril de 1935, tomada independientemente, es anticonstitucional en su letra en tanto en cuanto se refiere a la creación de la Comisión Industrial por haber sido ésta creada en violación a las disposiciones de los artículos 37 (últ. párr.) y 18 (a) de la Ley Orgánica de Puerto Rico; siendo posible, y por lo tanto indispensable, para sostener la validez de la referida parte de ley, interpretarla conjuntamente con la ley número 15 de 14 de abril de 1931 que hace al Comisionado del Trabajo de Puerto Rico miembro *ex-officio* de dicha Comisión Industrial."

Alega además que independientemente de los tres fundamentos antes expuestos, la resolución recurrida es también nula por los motivos que a continuación se expresan:

"1. Porque la Comisión Industrial carece de facultad en ley para construir y fijar un tipo de prima, dentro del procedimiento de revisión autorizado por el artículo 24 de la ley número 45 de 18 de abril de 1935.

"2. Porque, en la hipótesis de que tuviera tal facultad, lo cual siempre niega este recurrido, la Comisión Industrial, al revisar la decisión del Administrador fijando un tipo de prima para una clasificación, conforme al procedimiento de revisión autorizado por el artículo 24 de la ley antes citada, queda obligada por los mismos índices estatutarios que dicha ley señala al Administrador para fijar originalmente dicho tipo, y habiendo esta Comisión pasado por alto, desatendido e ignorado dichos índices estatutarios, así como el man-

dato de ley de seguir el criterio del Actuario en la confección de un tipo, siguiendo en su lugar su propio criterio independiente, contrario al criterio y a la práctica actuarial, fijando como consecuencia de su actuación ilegal un tipo de $4.49 a la clasificación 0030, ha actuado caprichosa y anticientíficamente y sin base legal alguna para ello.

"3. Porque, bajo esa misma hipótesis, el tipo de $4.49 fijado por la Comisión Industrial es erróneo, ilegal y nulo, siendo además caprichoso y arbitrario en cuanto el mismo fué fijado contrario a y en exceso de la autoridad que le confiere la ley.

"4. Porque, bajo la misma hipótesis anterior, la Comisión Industrial actuó ilegalmente al fijar a la clasificación 0030 para el año 1937–38 el mismo tipo de prima de 3.98 que rigió durante el año 1935–36 (más $0.51 por recargo de ½ del déficit de dicho año) sin tomar para nada los costos habidos durante dicho año 1935–36, tal como provee la ley, lo cual es además anticientífico toda vez que pone a funcionar el año 1937–38 a base de un nuevo déficit en dicha clasificación.

"5. Porque, bajo la misma hipótesis anterior, dicha resolución constituye una invasión a las facultades y poderes que el artículo 23 de la ley confiere al Administrador del Fondo del Estado en cuanto a la revisión anual por dicho funcionario de los tipos de primas para las distintas clasificaciones, y pretende gobernarle sin autoridad alguna y *a priori* en el uso de su sana discreción, imponiéndole por anticipado normas y trazándole pautas en la materia técnica de construcción de tipos, aún para el futuro, en forma arbitraria, caprichosa y anticientífica y contraria a la ley, y fijando procedimientos técnicos erróneos sin autoridad alguna en ley, y hasta determinando y fijando un tipo de prima a la clasificación 0030 para el próximo año 1938–39, todo en violación abierta de la Ley.

"6. Porque, bajo la misma hipótesis anterior, la Comisión Industrial ha incurrido en grave error en su resolución, ignorando en absoluto la práctica actuarial, y llegando a conclusiones a través de principios erróneos, y asimismo interpretando en forma incorrecta la situación ante ella planteada, de forma tal que queda demostrada su falta de compenetración y dominio de la cuestión técnica en controversia, decretando sin base legal ni científica alguna un nuevo déficit en la clasificación 0030 para el año 1937–38, todo con grave perjuicio para la organización y poniendo en peligro y amenazando su solvencia y estabilidad, y predeterminando su fracaso en forma ilegal y caprichosa.

"7. Porque ha mediado grave error, pasión, prejuicio y parciali-dad por parte de la Comisión Industrial al apreciar y darle valor a la evidencia en este caso, toda vez que no existe evidencia legal alguna que justifique la referida resolución, siendo, por el contrario, toda la evidencia en el caso contraria a la resolución dictada.

"8. Porque habiendo mediado una nueva revisión del tipo de la clave 0030 por parte del Administrador, cuyo tipo no fué en ningún momento impugnado por los peticionarios, la Comisión cometió error de derecho al no resolver que el tipo actualmente en vigor es el tipo de $5.29 así revisado.

"9. Porque la Comisión Industrial cometió error en el procedi-miento al admitir prueba *aliunde* e independiente de aquella usada por el Administrador para la revisión de tipos efectuada por dicho funcionario.

"10. Porque asimismo la Comisión Industrial cometió error al admitir evidencia sobre, y basar en parte su resolución en, hechos ocu-rridos con posterioridad a la fecha en que fueron revisados los tipos por el Administrador del Fondo del Estado, todo contrario al proce-dimiento de revisión autorizado por la ley."

El artículo 11 de la Ley número 45 de 1935 (Leyes de ese año, (1) pág. 251), que confiere jurisdicción a este tribunal para revisar las resoluciones de la Comisión Industrial, expre-samente dispone que la revisión se limitará a cuestiones de derecho solamente.

Las tres primeras cuestiones suscitadas por el recurrente, marcadas con las letras A, B y C, que indudablemente son cuestiones de derecho, han sido ya resueltas clara y termi-nantemente por este tribunal en el caso de *Sucesión Rodrí-guez* v. *Comisión Industrial,* 53 D.P.R. 825, y a lo allí dicho, nada tenemos que agregar.

La marcada con el número 1 es puramente de derecho, pero las marcadas con los números 2 a 10, ambos inclusives, pueden clasificarse de cuestiones mixtas de hecho y de dere-cho. De derecho, en tanto en cuanto impugnan la resolución de la Comisión Industrial por no ajustarse a los artículos 23 y 24 de la citada ley, dispositivos el primero de dichos artícu-los del procedimiento a seguir por el Administrador para la fijación de la prima, y el segundo, del que deberá seguir la

Comisión Industrial para revisar las decisiones del Administrador, fijando y regulando las primas para cada grupo de oficios o industrias. Son de hecho en tanto en cuanto impugnan las conclusiones a que llegó la Comisión en la apreciación de la evidencia después de haber seguido el procedimiento prescrito por la ley. Careciendo como carecemos de jurisdicción para revisar las cuestiones de hecho y resueltas ya las tres primeras cuestiones, A, B y C, por el caso de *Sucesión Rodríguez* v. *Comisión Industrial,* supra, luego de resolver la cuestión marcada con el número 1 que se refiere a la facultad de la Comisión para rebajar los tipos, procederemos a determinar si se siguió el procedimiento que fija la ley al revisar la decisión del Administrador. [3, 4] En este caso la Comisión ha reducido o rebajado la prima o tipo que el Administrador fijó para la clasificación 0030 (industria de caña) y su facultad para hacerlo surge claramente del artículo 24 de la citada ley, que en lo pertinente dice así:

"Art. 24.—Las decisiones del Administrador fijando y regulando las primas para cada grupo de oficios o industrias y la clasificación de primas para regir cada grupo o industria en particular, o cualquier orden aumentando las primas a determinado patrono según se dispone en el artículo anterior, podrá ser revisado por la Comisión Industrial de Puerto Rico de la manera siguiente:

"1. El patrono perjudicado podrá radicar en la Comisión Industrial de Puerto Rico, en cualquier momento durante el año en el cual se hacen efectivas las decisiones del Administrador, una petición de revisión por dicha Comisión de las decisiones hechas por el Administrador con relación a los tipos o primas para uno o más oficios o industrias, dando los motivos por qué dichos tipos o primas debían enmendarse; y se requerirá que el Administrador comparezca y conteste dicha petición dentro del término de diez (10) días. La Comisión le dará preferencia al caso sobre los demás casos del calendario, y procederá a dictar su decisión final de acuerdo con las reglas que dicha Comisión haya promulgado.

"2 . . . . . . . . .

"3. En caso que la Comisión resuelva en el sentido de rebajar la prima que el Administrador haya fijado para cualquier clase de oficio o industria, no se ordenará en ningún caso ni al Administrador del Fondo del Estado, ni al Tesorero de Puerto Rico que devuelvan

el exceso que se haya pagado en primas o contribuciones sino que dicho exceso, calculado desde la fecha en que se radique la petición, se descontará de las primas o contribuciones que hayan de recaudarse en el futuro a los patronos que hayan radicado las peticiones.

"4. En el caso que se modifique una clasificación por orden o decreto de la Comisión, según se dispone en la presente, el Administrador calculará nuevos tipos, primas o contribuciones en la forma que determine la Comisión para aquellos patronos que tengan obreros o empleados comprendidos en la clasificación o clasificaciones objetadas; *Disponiéndose*, que dichos tipos, primas o contribuciones se calcularán desde la fecha en que se radicó la petición de revisión en la Comisión y sólo regirán hasta que termine el año económico a que pertenecía dicha clasificación o clasificaciones.

"       .     .     .     .     .     .     .     .     .     ."

La Comisión Industrial, al conocer del recurso de revisión, no está como el Tribunal Supremo limitada a cuestiones de derecho solamente. El artículo 24, en su inciso 3, prescribe, "en caso que la Comisión resuelva en el sentido de *rebajar la prima que el Administrador haya fijado* . . .", y en la edición inglesa dice, "in case the decision of the Commission is in the sense of *reducing the rate or premium that the Manager has fixed.* . . ." Y en el inciso 4 del mismo artículo repite, "en el caso que *se modifique una clasificación por orden o decreto de la Comisión* . . .", y en la edición inglesa dice, "in case any classification is *modified by an order or decree of the Commission.*"

Es evidente la intención del legislador de que la Comisión no se limite en su resolución a resolver si hubo o no error al calcular el tipo o prima de una clasificación, debiendo por el contrario *rebajar (reduce)* o *modificar (modify)* de una vez el tipo que hubiere fijado el Administrador al que de acuerdo con el criterio de la Comisión deba reducirse, no por mero capricho de ésta, sino después de oír y pesar las pruebas y tener en cuenta todas las circunstancias que requiere la ley. ¿A qué fin práctico conduce que la Comisión se limite a ordenar la reducción del tipo sin decir la cantidad exacta a que deba reducirse? ¿Cómo puede el Admi-

nistrador adivinar cuál fué el tipo que tuvo en mente la Comisión?

■■ Se alega por el recurrente que la Comisión, al reducir el tipo de $5.85 a $4.49 ha actuado caprichosa y arbitrariamente, ignorando en absoluto la práctica actuarial, demostrando su falta de compenetración y dominio de la cuestión técnica en controversia, decretando sin base legal ni científica alguna un nuevo déficit en la clasificación 0030, y que ha existido grave error, pasión, prejuicio y parcialidad por parte de la Comisión Industrial en la apreciación de la prueba.

Nada más injusto. Hemos leído cuidadosamente el récord taquigráfico, que consta de 830 páginas, y si algo revela el mismo es una paciencia a toda prueba y un constante deseo de hacer completa justicia. La Comisión no actuó caprichosa ni arbitrariamente. Oyó toda la prueba que le quisieron presentar las partes, recibió en evidencia prueba documental de una y otra, y declararon ante ella el propio Administrador del Fondo del Seguro del Estado, el actuario del Fondo del Seguro del Estado, que recomendó el tipo de $5.85, el Sr. Santos Ramírez, que fué el actuario que preparó los tipos que rigieron durante el imperio de la ley anterior, y declaró también el Sr. González Quiñones, Secretario de la Asociación de Agricultores.

De la declaración del propio Sr. Montaner resulta que después de radicarse el recurso de revisión ante la Comisión Industrial, el Administrador, en transacción con otros patronos comprendidos en la clasificación 0030, redujo a $5.29 el tipo que por consejo de su actuario había fijado en $5.85, haciendo extensiva la reducción a todos los patronos de esa clasificación, incluyendo a los peticionarios. (Récord, pág. 567 *et seq.*)

Sostiene la representación del Administrador que por el hecho de haber sido reducido el tipo de $5.85 que motivó el recurso de revisión en la Comisión Industrial, debió desestimarse por ésta el recurso interpuesto por Matos *et al,* puesto que ellos se quejaban de un tipo que ya no existía y

que por consiguiente lo que procedía era presentar una nueva petición de revisión si era que no aceptaban el nuevo tipo de $5.29. La Comisión, actuando correctamente, denegó la petición de la representación del Fondo del Estado y continuó el caso como si tal reducción no hubiera sido hecha.

Resulta además de la declaración del Administrador que durante el año económico 1936–37 hubo una economía de $80,000 en gastos de hospitalización, economía que según el Administrador se redujo a $51,000 o $52,000 porque hubo aumento de gastos de médico. (Récord, pág. 538.)

También aparece la siguiente situación anormal con respecto a gastos de hospitalización. Veamos la declaración del Administrador:

''P. ¿Ha intervenido Ud. además con la permanencia de esos obreros en el hospital?

R. Bueno, yo no podría intervenir en eso, porque ésa es una cuestión médica.

P. ¿El médico que lo acompaña a Ud. en esas visitas ha intervenido?

R. Sí, señor, el médico sí.

P. ¿Con qué resultados?

R. Pues no solamente en las visitas que ha hecho el Administrador del Fondo del Estado acompañado del inspector médico o de cualquiera otro médico del Fondo del Seguro del Estado, sino que en las visitas que periódicamente hacen los inspectores médicos, solos o acompañados de otros oficiales del Fondo del Estado, dan de alta a los obreros, porque ellos estiman que no deben estar hospitalizados.

P. ¿Recuerda Ud. qué número de obreros fué dado de alta en esas visitas durante el año económico 1935–36?

R. Yo no recuerdo exactamente, pero sé que en casi todas las visitas que hacen los inspectores médicos dan de alta a obreros en los hospitales.

P. Y con posterioridad al año 1935–36, o sea, durante el año 1936–37, ¿no tomó Ud. en consideración esa situación al hacer los contratos?

R. ¿En qué sentido?

P. ¿Tomó Ud. en consideración o no el hecho de que ciertas clínicas u hospitales mantenían hospitalizados a obreros que debían ser dados de alta?

R. Bueno, nosotros no juzgábamos o no hemos juzgado que intencionalmente se hizo sostener a esa gente hospitalizada, sino que es una cuestión más bien de criterio médico; un médico puede sostener que un obrero necesita hospitalización mientras que otro puede decir que no, y la mayor parte de las veces que eso ocurrió, ocurría con obreros lesionados en los pies, que nuestro inspector médico opina que el obrero puede hacer el viaje del barrio donde reside al hospital y el médico del hospital opina que el dar de alta a ese individuo resultaría como consecuencia una infección, y se entabla, como es natural, una discusión entre el médico inspector y el médico de asistencia.

P. ¿De manera que no se ha establecido ninguna sanción para esas clínicas?

R. No, no se ha establecido ninguna, sino que sencillamente hemos intensificado en todo lo que hemos podido dentro de las circunstancias y teniendo en cuenta la distancia que hay que recorrer, hemos intensificado el servicio de inspección''. (Récord, pág. 398–400.)

La posible economía en los gastos de hospitalización fué desde luego tomada en consideración por la Comisión al reducir la prima como la redujo a $4.49.

El artículo 23 de la Ley ordena al Administrador fijar para cada clasificación de oficio o industria las primas más bajas posibles, incluyendo primas mínimas que sean consistentes con la pretensión de establecer un Fondo de Seguro del Estado solvente. Sin embargo, el actuario del Fondo, Sr. Bangert, explicando los motivos que lo indujeron a recomendar el aumento de tipo, declaró:

''Independientemente de la exposición de nóminas, fué necesario para mí tener una cosa en mente y ésta fué recomendar al Fondo de Seguro del Estado conseguir más dinero, de manera que el Fondo no trabajara con pérdidas; en esa forma el *Manager* podía estar a la altura de la responsabilidad manteniendo un fondo solvente del Estado.'' (Récord, pág. 705.)

De manera, pues, que echando a un lado las nóminas, factor que representa el ingreso con que puede contar el Fondo, se tuvo en mente conseguir más dinero, de manera que el Fondo trabajara sin pérdidas. Claro es que en esas condiciones pudo recomendarse un tipo de $7 ó $9 por cada $100 de jornales y en ese caso habría más dinero en el Fondo, prác-

tica que, como hemos visto, no armoniza con el precepto expreso del artículo 23 que exige al Administrador fijar para cada clase de oficio o industria las primas más bajas posibles, incluyendo primas mínimas que sean consistentes con la pretensión de establecer un Fondo de Seguro del Estado.

La manifestación del Actuario del Fondo de Seguro del Estado, que recomendó el tipo de $5.85, independientemente de la exposición de nóminas y la actuación del Administrador al rebajar espontáneamente el tipo de $5.85 a $5.29 para evitar los recursos de revisión de los patronos ante la Comisión Industrial, claramente indica que el tipo de $5.85 era mayor del necesario para mantener solvente el Fondo: en lo que al Actuario respecta, porque su manifestación demuestra una absoluta despreocupación de los intereses de los patronos y menosprecio del mandato expreso del artículo 23 de la Ley, que sólo autoriza la prima más baja posible consistente con la solvencia del Fondo; en cuanto al Administrador concierne, porque si el tipo de $5.85 se fijó en efecto, como es de presumirse, a base de cálculo, y habida consideración de las disposiciones del artículo 23, supra, no se explica que tan fácilmente pudiese rebajarlo de $5.85 a $5.29, sin poner en peligro la solvencia del Fondo, pues como es natural presumimos que el Administrador no fijará a sabiendas un tipo insuficiente.

Conforme aparece del récord, la Comisión, al reducir el tipo a $4.49, tomó en consideración todas las circunstancias que tuvo ante sí el Administrador, pero desde luego, también tuvo en cuenta las posibles economías y consideró además que el propósito manifiesto de la Ley no es obtener de los patronos la mayor cantidad posible de dinero, sino ajustarse a la norma establecida en el artículo 23 de la ley. Calculando además el déficit que debía cubrirse, estimó que el tipo de $4.49 era razonable, y al así reducirlo, no lo hizo arbitraria ni caprichosamente, sino después de oír y apreciar no solamente la prueba que ofreció el Fondo del Estado, si que

también la ofrecida por los patronos, entre las cuales se halla la declaración del Actuario Sr. Ramírez.

Un solo error tiene a nuestro juicio la resolución de la Comisión Industrial y es al ordenar que para el año 1938–39 se tome en cuenta su distribución del déficit. Este pronunciamiento es erróneo, porque la Comisión no puede anticipar normas a seguir por el Administrador en años futuros. Incumbe al Administrador fijar los tipos para cada año (art. 23) y a la Comisión reducirlos o modificarlos si no fuesen los más bajos posibles consistentes con la pretensión de crear un fondo de seguro del Estado solvente (art. 24).

*Por lo expuesto, procede modificar la resolución de la Comisión Industrial de Puerto Rico, eliminando de la misma el pronunciamiento que ordena al Administrador que para el año económico 1938–39, que no ha sido objeto de revisión, se tome en cuenta la distribución del déficit, y así modificada se confirma.*