NICOLÁS CARDONA y LA ASOCIACIÓN DE PRODUCTORES DE AZÚCAR DE PUERTO RICO, recurrentes, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., recurrida.

Número 491.
*Sometido:* 2 de abril de 1956. *Resuelto:* 9 de octubre de 1956.

*Fiddler, González & Nido* y *Carlos J. Faure,* abogados de los recurrentes; *Ángel de Jesús Matos, Aida Casañas* O'*Connor* y *Donald R. Dexter,* abogados del Administrador del Fondo del Seguro del Estado, interventor.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

Al igual que anualmente lo había hecho desde 1944–45, el Administrador del Fondo de Seguro del Estado consolidó

para el año 1951–52 los riesgos del cultivo y recolección de la caña de azúcar con todas las demás actividades agrícolas en Puerto Rico, fijándoles una prima de $3.90 por cada $100 de nómina.  El 26 de julio de 1951 los recurrentes, que son patronos que se dedican al cultivo y recolección de caña de azúcar y que como tales están asegurados bajo las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo—Núm. 45 de 18 de abril de 1935 (pág. 251), según ha sido enmendada, 11 L.P.R.A. secs. 1 y siguientes—acudieron ante la Comisión Industrial de Puerto Rico en solicitud de que se desconsolidase la actividad a que se dedican de aquéllas incluídas en la clasificación "Agricultura en General" y de que se promulgasen primas separadas para cubrir solamente los riesgos en la actividad de ellos.  Su contención fué que al consolidar la recolección y cultivo de la caña con la clasificación "Agricultura en General", el Administrador actuó en forma irrazonable y caprichosa, sin tener base suficiente para establecer diferencias o discrímenes, privándoles así de su propiedad sin el debido proceso de ley y negándoles la igual protección de las leyes.  La Comisión Industrial, luego de oír ampliamente a los recurrentes y al Administrador, dictó resolución confirmando la decisión recurrida.  Declarada sin lugar su moción de reconsideración, los recurrentes acudieron ante nos con el recurso de revisión autorizado por el art. 11 de la Ley.  11 L.P.R.A. sec. 12.  El auto interesado fué expedido por nosotros.

■■ Cuestionan en primer lugar el poder o autoridad del Administrador para establecer clasificaciones y consolidaciones de riesgos, ocupaciones o industrias.  Empero, ese poder o autoridad surge de manera palmaria del contexto del art. 23 de la Ley 45, supra, el cual, según figura en 11 L.P.R.A. sec. 24, textualmente copiado reza así:

"El Administrador del Fondo del Seguro del Estado, haciendo uso de los poderes y de la discreción que por la presente se le confiere, antes del primero de junio de cada año deberá preparar una lista de clasificaciones de acuerdo con los oficios

o industrias a los que se refiere este capítulo. También deberá fijar para cada clase de oficio o industria las primas más bajas posibles, incluyendo primas mínimas, que sean consistentes con la pretensión de establecer un Fondo de Seguro del Estado solvente y de crear un sobrante razonable.

"El Administrador del Fondo de Seguro del Estado deberá revisar de la lista de clasificaciones que se dispone en el párrafo anterior, las que a su juicio deban revisarse, antes del primero de julio de 1936 y subsiguientemente, todos los años. Tal revisión se hará de acuerdo con los datos acumulados en la práctica de seguros habida desde que empezó a regir este capítulo y hasta el 31 de diciembre del año anterior, y de acuerdo con aquella otra experiencia incidental y con las estadísticas de que pueda disponerse con relación a los peligros y riesgos del seguro en la clasificación a revisar.

"En conexión con esta revisión anual de la lista de clasificaciones, el Administrador del Fondo de Seguro del Estado deberá revisar las primas, incluyendo las primas mínimas, que correspondan a las clasificaciones vigentes que a su juicio deban revisarse. Tales primas, incluyendo las primas mínimas para cada clase de oficio o industria, serán las más bajas posibles consistentes con el criterio del actuario, con la pretensión de conservar solvente el fondo del estado y el sostenimiento de un sobrante razonable, después de tomar en consideración las pérdidas incurridas por reclamaciones legítimas motivadas por lesión o muerte, cuyo pago él hubiere autorizado con cargo al Fondo de Seguro del Estado en beneficio de los lesionados y de los beneficiarios de los fenecidos y prestando toda consideración para mantener las reclamaciones estatutarias adecuadas y las reservas eventuales, así como también los gastos de administración y todos los demás; y a fin de conseguir dicho objetivo, el Administrador tendrá presente los siguientes requisitos al clasificar los oficios o industrias y al fijar las primas por los riesgos de los mismos; *Disponiéndose,* que el seguro para plantaciones de café y su recolección será incluído dentro de la clasificación del seguro agrícola general.

"1. El Administrador llevará una cuenta exacta del dinero que cada uno de los distintos grupos de oficios o industrias pague por primas y de los gastos en administrar el Fondo del Estado, así como también de los desembolsos y gastos en que se incurra por lesiones o muerte de trabajadores y empleados en cada uno de dichos grupos de oficios o industrias, incluyendo

la creación de una reserva con qué hacer frente a las pérdidas anticipadas o inesperadas hasta que todas las reclamaciones lleguen a su vencimiento; . . .

"2. El Administrador del Fondo de Seguro del Estado podrá emplear para graduar las primas, el sistema que a su juicio haya sido mejor calculado para fijar individualmente el valor o la prima de cada riesgo del modo más equitativo, y que se funde en la experiencia obtenida de los accidentes ocurridos que consten en los archivos de cada patrono individualmente, y a incitar y estimular la evitación de accidentes; formulará reglas fijas y equitativas para regirlos, las cuales, sin embargo, conservarán para cada riesgo los principios básicos del Seguro de Compensaciones a Obreros."

Ese artículo confiere poder y discreción al Administrador del Fondo de Seguro del Estado. A la vez le ordena que antes del primero de junio de cada año prepare una lista de clasificaciones de acuerdo con los oficios o industrias a que se refiere la Ley de Compensaciones por Accidentes del Trabajo; que para cada clase de oficio o industria fije las primas más bajas posibles, consistentes con la pretensión de establecer un Fondo de Seguro del Estado solvente y de crear un sobrante razonable; que revise la lista de clasificaciones, que a su juicio deban revisarse, antes del primero de julio de cada año, de acuerdo con los datos acumulados en la práctica de seguros habida desde que empezó a regir la Ley y hasta el 31 de diciembre del año anterior, con aquella otra experiencia incidental y con las estadísticas de que pueda disponer con relación a los peligros y riesgos del seguro en la clasificación a ser revisada; y que—a virtud de un disponiéndose—incluya el seguro para plantaciones de café y su recolección dentro de la clasificación del seguro agrícola general.

La discreción concedida por la ley al Administrador es una con la cual los tribunales no pueden intervenir, a no ser que dicho funcionario actúe de manera arbitraria, caprichosa o fraudulenta. En *United States* v. *Bush & Co.*, 310 U. S. 371, 84 L. Ed. 1259, 1262, el Tribunal Supremo de

la nación, ratificando su criterio anterior, manifestó que "cuando un estatuto otorga un poder discrecional a cualquier persona, para ser ejercido de acuerdo con el propio criterio que esa persona forme de ciertos hechos, es sana regla de hermenéutica, que el estatuto convierte a esa persona en juez único y exclusivo de la existencia de tales hechos." Véanse también *United States* v. *California & Oregon Land Co.*, 37 L. Ed. 354; 43 Am. Jur., *Public Officers*, sec. 255 y 11 Am. Jur., *Const. Law*, sec. 190. En *State* v. *Industrial Commission*, 162 N.E. 800, en el cual estaba envuelta una cuestión parecida a la que nos ocupa, el Tribunal Supremo del Estado de Ohio en una opinión *Per Curiam* se expresó así:

"La clasificación no puede aplicarse a una ocupación o industria como unidad individual. La clasificación que tiene por miras la Ley de Compensaciones por Accidentes del Trabajo . . . se refiere a ocupaciones o industrias como una clase, que generalmente operan bajo condiciones similares. Tal es el espíritu del artículo 1465 . . . que autoriza la clasificación de ocupaciones o industrias. De acuerdo con ese artículo la clasificación no se hace según el empleo, según el número de personas ocupadas en el mismo, ni según la suma de dinero pagada, sino que la clasificación de ocupaciones o industrias se hace 'en armonía con su grado de peligrosidad.' "

Cf. *United States* v. *Rock Royal Co-Operative*, 307 U.S. 533, 83 L. Ed. 1446, 1467. No creemos, por tanto, que al efectuar la consolidación aquí envuelta, el Administrador actuara arbitraria o caprichosamente o en forma alguna contraria a derecho.

Igualmente insisten los recurrentes en que el Administrador violó la cláusula sobre el debido proceso de ley, ya que al consolidar las primas no celebró vistas ni dió a ellos oportunidad para intervenir en relación con las mismas. Tampoco tienen razón. Reiteradamente hemos resuelto que nuestra Ley de Compensaciones por Accidentes del Trabajo es constitucional. *Montaner* v. *Comisión Indus-*

*trial,* 54 D.P.R. 55; *Sucn. Rodríguez* v. *Comisión Industrial,*
53 D.P.R. 825, 829. De acuerdo con la prueba que la Comisión Industrial tuvo ante sí, cuando en 1944–45 el Administrador consolidó, a los fines de la fijación de las primas, la industria de cultivo y recolección de cañas con la agricultura en general, él celebró vistas. En años sucesivos sólo celebró vistas para la fijación de las distintas primas, mas no para la revisión o consolidación de ellas. Esto, a nuestro juicio, es suficiente. La ley no específica que para la revisión o consolidación de primas haya que celebrar vistas, sino que dispone—como hemos visto—que la revisión se hará de acuerdo con los datos acumulados en la práctica de seguros, con aquella otra experiencia incidental y con las estadísticas de que pueda disponerse con relación a los peligros y riesgos del seguro en la clasificación a ser revisada. La extensa declaración del Administrador demuestra, a nuestro juicio, que él procedió de conformidad con lo especificado por el estatuto que rige la materia.

Además, se ha decidido que los requisitos del debido proceso de ley quedan cumplidos si en cualquier momento antes de que la actuación gubernamental sea firme se conceden vistas por acción administrativa o judicial. Véanse *Martínez* v. *Tribunal Superior,* ante pág. 453 y *Matos* v. *Montaner,* 54 D.P.R. 76.

Se quejan asimismo los recurrentes de que la Comisión Industrial también erró al resolver que la apelación por ellos interpuesta estaba prescrita. Sobre este particular la recurrida se expresó del siguiente modo:

"Entendemos que habiendo decidido el Administrador promulgar para el año 1944–45 una sola clasificación para la agricultura denominada Agricultura en General, con un tipo de prima de $4.95 por cada $100 de nómina, y no habiendo los patronos querellantes apelado para ante la Comisión Industrial en cualquier momento durante el año en el cual se hizo efectiva la decisión del Administrador, la apelación sobre esa misma clasificación está prescrita."

Al así expresarse, la Comisión sin duda erró.  El art. 24 de la Ley—11 L.P.R.A. sec. 25—dispone en lo pertinente que:

"Las decisiones del Administrador fijando y regulando las primas para cada grupo de oficios o industrias y la clasificación de primas para regir cada grupo o industria en particular, o cualquier orden aumentando las primas a determinado patrono según se dispone en la sección anterior, podrá ser revisado por la Comisión Industrial de Puerto Rico de la manera siguiente:

"1. El patrono regular o permanente, perjudicado podrá radicar en la Comisión Industrial de Puerto Rico dentro del término de treinta (30) días después de promulgados los nuevos tipos, . . . una petición para que por la Comisión Industrial de Puerto Rico se proceda a la revisión de las decisiones del Administrador con relación a los tipos o primas para uno o más oficios o industrias, dando los motivos por qué dichos tipos o primas deban enmendarse; . . ."

Como a tenor del artículo anterior el Administrador viene obligado a hacer una revisión de las primas *todos los años*, el hecho de que hiciera la consolidación por primera vez en 1944–45 no significaba en forma alguna que la apelación tuviera que entablarse dentro de los treinta días de haberse efectuado tal consolidación original.  Para 1951–52 él venía obligado a hacer, como hizo, una determinación de los tipos o primas que regirían para ese año.  La promulgación de esos nuevos tipos o primas inició el período de treinta días que tenían los patronos para acudir ante la Comisión.  Toda vez que la determinación del Administrador se hizo para el primero de julio de 1951, la apelación interpuesta en este caso en 26 del mismo mes y año estaba en tiempo.

■ Por otro lado, aunque la Comisión manifestó que la apelación de los querellantes estaba prescrita,(1) ella entró

---

(1) Lo que la Comisión sin duda quiso decir fué que habiéndose interpuesto la apelación tardíamente, ella carecía de jurisdicción para conocer de la misma.  En ese caso lo único que podía hacer era así declararlo sin entrar en los méritos de la cuestión que tenía ante sí.  *Autoridad Sobre Hogares* v. *Sagastivelza*, 71 D.P.R. 436, 439.

en los méritos del asunto y su desestimación no tuvo consecuencias de clase alguna. El error así cometido no fué, por ende, uno que da lugar a la revocación. *Ex parte Montalvo*, 70 D.P.R. 462, 468.

*Debe confirmarse la resolución recurrida.*

El Juez Asociado señor Saldaña está conforme con el resultado.