# 2007 DTA 87

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL XI**

VAQUERÍA TRES MONJITAS, INC.
Recurrente

v.

CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO
Recurrida

Núm. KLRA-2006-00379

San Juan, Puerto Rico, a 28 de junio de 2007

Panel integrado por su Presidente, el Juez Ortiz Carrión,
y las Juezas Feliciano Acevedo y Fraticelli Torres

Fraticelli Torres, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

En este recurso, Vaquería Tres Monjitas, Inc. nos solicita que revisemos una resolución emitida en reconsideración por la Comisión Industrial de Puerto Rico, que dejó sin efecto otra resolución emitida previamente a su favor por esa misma agencia sobre la revisión de unas primas impuestas y cobradas a esa parte

por la Corporación del Fondo de Seguro del Estado.

Luego de examinar la resolución recurrida, resolvemos que este Tribunal no tiene jurisdicción para considerar el recurso de revisión ante nos, debido a que la resolución recurrida es una resolución interlocutoria y no una resolución final de la Comisión Industrial. Por tal razón, se desestima el recurso para que continúen los procedimientos pendientes ante las agencias concernidas.

## I

Vaquería Tres Monjitas, Inc. es una corporación que se dedica a la elaboración, venta y distribución de leche y, como tal, es un patrono asegurado por la Corporación del Fondo del Seguro del Estado (el Fondo).

El Fondo llevó a cabo un estudio técnico abarcador sobre la actividad de venta y distribución de leche en Puerto Rico y, basado en ese estudio, el 2 de septiembre de 1986 divulgó un informe titulado *Estudio sobre Compañías Elaboradoras de Leche en Puerto Rico*. El estudio evaluó el funcionamiento de las seis compañías elaboradoras de leche del país, entre ellas, la Vaquería Tres Monjitas. Dio énfasis a los procesos de elaboración, recogido y entrega de los productos, al comercio y al consumidor, particularmente en las tareas específicas que realizan los choferes que tienen la encomienda de entregar la leche directamente a los clientes desde las plantas de laboración o centros de distribución.

Posteriormente, el 28 de febrero de 1990, la Comisión Industrial emitió una resolución en el caso *Suiza Dairy Corp. y otros v. Fondo del Seguro del Estado*, Caso Núm. 82-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, en la que determinó que los conductores y vendedores de leche debían clasificarse por el Fondo bajo la clave 7380, en lugar de la clave 2070, clasificación que habían tenido hasta ese momento y que exigía una prima sustancialmente mayor. ■

La Comisión Industrial reiteró su decisión en la resolución en reconsideración emitida el 12 de junio de 1990. Esa decisión advino final y firme. No obstante, a pesar de conocer el contenido de la resolución de la Comisión Industrial, el Fondo no modificó el Manual de Clasificaciones e Industrias y Tipos de Seguros.

Vaquería Tres Monjitas advino en conocimiento de la aludida resolución de la Comisión Industrial en 2001. Solicitó al Fondo la aplicación retroactiva de lo resuelto por la Comisión a sus choferes vendedores, debido a que su negocio era similar en todos los aspectos a las corporaciones elaboradoras de leche cubiertos por esa resolución. Argumentó que desde el año-póliza 1990-1991 en adelante, la nómina de sus choferes vendedores debió segregarse de la clasificación gobernante de Leche y Helado, clave 2070, para incluirla bajo la clave 7380-320, aplicable a choferes, carreteros y sus ayudantes. Como consecuencia, Vaquería Tres Monjitas solicitó al Fondo el reembolso de las cantidades pagadas en exceso desde 1990-1991 hasta 2001. ■

Con esos antecedentes, el 25 de febrero de 2003, Vaquería Tres Monjitas le cursó una comunicación al Administrador del Fondo en la que le solicitó una reunión para considerar el asunto de las primas pagadas en exceso, al amparo de la decisión del caso de *Suiza Dairy Corp. y otros v. Fondo del Seguro del Estado*, *supra*. El Administrador no respondió oportunamente a su solicitud.

El 10 de julio de 2003, Vaquería Tres Monjitas presentó ante la Comisión Industrial una petición de **revisión por demora**, a tenor del Art. 7 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley 45 de 18 de abril de 1935, 11 L.P.R.A. sec. 9. Solicitó a la Comisión que asumiera jurisdicción sobre el caso y señalara una vista pública para dilucidar su reclamación de que el Fondo le acreditara las primas sobrepagadas durante los años 1990-1991 hasta 2000-2001.

La Comisión acogió la solicitud, llevó a cabo una vista pública el 11 de septiembre de 2003 y **emitió una primera resolución el 9 de marzo de 2004 en la que le ordenó al Fondo que evaluara la reclamación de Vaquería Tres Monjitas en el término de noventa días y emitiera la decisión correspondiente en derecho.**

Dos meses más tarde, el 27 de mayo de 2004, Vaquería Tres Monjitas le sometió al Fondo las planillas enmendadas por el período en controversia para asistir al Fondo en el cumplimiento de la orden de la Comisión.

Ante la inacción del Fondo, el 17 de junio de 2004, Vaquería Tres Monjitas presentó ante la Comisión Industrial una **segunda solicitud** para que ese organismo asumiera jurisdicción en el caso y emitiera la decisión correspondiente. **Vaquería Tres Monjitas solicitó específicamente a la Comisión Industrial que le ordenara al Fondo que le otorgara un crédito a su favor de $706,416.96**. Transcurridos más de dos meses desde que sometió esa segunda solicitud, el 30 de agosto de 2004, Vaquería Tres Monjitas le solicitó por **tercera vez** a la Comisión que asumiera jurisdicción debido a que el Fondo no había emitido su decisión y ya había transcurrido el período de noventa días que la Comisión le había concedido para así hacerlo. Tres meses después, el 15 de noviembre de 2004, Vaquería Tres Monjitas nuevamente le reiteró a la Comisión su petición de que ese organismo asumiera jurisdicción en el caso, señalara una vista adjudicativa y resolviera el caso en sus méritos.

La Comisión celebró la vista solicitada por Vaquería Tres Monjitas el 25 de enero de 2005 y emitió su resolución dos días después, mediante la cual le concedió a las partes quince días para que se reunieran y le sometieran a la Comisión una moción informativa en la que le expresaran los acuerdos tomados. **El Fondo cumplió con lo ordenado y el 24 de febrero de 2005 le sometió una moción informativa a la Comisión en la que señaló que el 21 de junio de 2004 refirió el caso a la División de Seguros de la Oficina Regional de San Juan para su consideración**. El Fondo acompañó su moción con copia del referido.

El 28 de marzo de 2005, Vaquería Tres Monjitas presentó nuevamente una solicitud urgente para que la Comisión asumiera jurisdicción sin necesidad de la celebración de vista pública, pues ya se había celebrado una vista el 25 de enero de 2005. Además, le solicitó a la Comisión que le ordenara al Fondo que aceptara sus planillas enmendadas presentadas, reliquidara la póliza para los años 1990-1991 en adelante y aplicara a su favor el crédito resultante de la liquidación, estimado en no menos de $706,416.95. Vaquería Tres Monjitas reiteró esta solicitud ante la Comisión el 21 de abril de 2005.

Posteriormente, el 16 de junio de 2005, Vaquería Tres Monjitas le sometió a la Comisión una moción informativa en la que enumeró todas las gestiones realizadas ante el Fondo y en la que le solicitó nuevamente a la Comisión que asumiera jurisdicción en el caso y emitiera la decisión que procedía en derecho. Además, le solicitó a la Comisión que le ordenara al Fondo otorgarle un crédito a su favor de no menos de $706,416.95.

Ese mismo día, la Comisión llevó a cabo una vista pública en la que Vaquería Tres Monjitas informó sobre las gestiones afirmativas que había hecho para lograr que el Fondo actuara, pero indicó que las Oficinas Regionales —que se suponía hicieran las auditorías—, le confirmaron que no las habían realizado debido a que carecían de personal para hacer ese tipo de auditoría que abarcaba tantos años. Además, estaban realizando las auditorías de los municipios y ese trabajo era prioritario. Véase resolución de la Comisión de 21 de julio de 2005.

Por su parte, la representación legal del Fondo señaló en la vista que no estaba preparada para litigar el caso, debido a que ese mismo día le habían entregado el informe sobre la industria lechera y no había tenido oportunidad de estudiarlo. Además, indicó que Vaquería Tres Monjitas no había puesto en posición a la Comisión para asumir jurisdicción sobre unas facturas que se emitieron en los años 1990 en adelante y que Vaquería Tres Monjitas pagó sin protestar o apelar. Alegó que Vaquería Tres Monjitas lo que pretendía era atacar colateralmente las facturas de esos años.

El representante del Fondo señaló, además, que no sabía cuál era la postura de la agencia en ese momento, pero alegó que el pleito continuaría porque la decisión emitida por la Comisión en 1990 era incorrecta y se pretendía imponerle al Fondo tal resolución, que fue emitida en un pleito en el que Vaquería Tres Monjitas no fue parte. El Fondo también argumentó que Vaquería Tres Monjitas estaba tratando de que la Comisión

171

asumiera jurisdicción basándose en el Art. 7 de la Ley, aun cuando no había una apelación de una decisión del Fondo para ser revisada por la Comisión.

La Comisión emitió una resolución el 21 de julio de 2005 mediante la cual determinó que el Fondo incurrió en demora, por lo que asumió jurisdicción y le concedió al Fondo un término final e improrrogable de treinta días para emitir la decisión solicitada por Vaquería Tres Monjitas en su carta de 26 de febrero de 2003. En su resolución, la Comisión resolvió que, del Fondo no cumplir con lo ordenado, debía mostrar causa por la cual no debían imponérsele sanciones económicas o procesales. Asimismo, del Fondo incumplir, Vaquería Tres Monjitas tenía que notificárselo a la Comisión mediante moción informativa junto a la cual podía acompañar un memorando de derecho en apoyo de su posición y/o una solicitud de vista pública, de entender que era procedente.

Tres meses después de emitida esta resolución, Vaquería Tres Monjitas presentó ante la Comisión una *Moción en Cumplimiento de Resolución*, acompañada de un memorando de derecho, en la que informó el incumplimiento del Fondo de la orden emitida por la Comisión en su última resolución, a pesar de que ya había transcurrido el término de treinta días concedido. Alegó que el Fondo tampoco mostró causa para justificar su incumplimiento. Por tal razón, Vaquería Tres Monjitas le solicitó a la Comisión que le ordenara al Fondo remitir el expediente del caso a ese organismo, así como también que la Comisión procediera a conceder la reclasificación y los remedios solicitados.

Posteriormente, el 25 de octubre de 2005, Vaquería Tres Monjitas presentó una *Solicitud Urgente de Adjudicación de Caso – Regla 23*, mediante la cual le solicitó a la Comisión que resolviera la controversia en su fondo lo antes posible, sin necesidad de celebración de vistas públicas adicionales, al tenor de lo dispuesto en la Regla 23 de Procedimiento de la Comisión, así como también que le impusiera penalidades procesales y económicas severas al Fondo por su reiterado incumplimiento. ■

Nueve días después, el 3 de noviembre de 2005, el Fondo emitió la resolución del caso y declaró con lugar la solicitud de Vaquería Tres Monjitas en cuanto a la segregación de la nómina de los choferes vendedores de la Clave 2070-053 de Leches y Helados, a fin de computar sus primas según la Clave 7380-320 de Choferes, Carreteros y sus Ayudantes. **No obstante, el Fondo autorizó ese ajuste a partir del segundo semestre del año póliza 2002-2003 y no a partir del año póliza 1990-1991**, como había solicitado Vaquería Tres Monjitas. El Fondo también le ordenó a la Oficina de Asuntos Actuariales que procediera a eliminar de la fraseología contenida en la descripción de las funciones incluidas en la Clave 2070-053 de Leches y Helados la oración final que señalaba que los choferes y sus ayudantes se incluirían sólo cuando la entrega o transportación fuese hecha por la misma empresa.

El 10 de noviembre de 2005, Vaquería Tres Monjitas presentó ante el Fondo el escrito titulado *Advertencia de Falta de Jurisdicción de la CFSE para Emitir su Decisión y en su Defecto Solicitud de Reconsideración*. En su escrito, Vaquería Tres Monjitas argumentó que esa agencia emitió esa resolución sin tener jurisdicción para ello, debido a que la Comisión ya había asumido jurisdicción en el caso y el Fondo había dejado vencer el término final e improrrogable concedido por la Comisión para emitir su decisión, por lo cual la resolución emitida por el Fondo era nula. No obstante, Vaquería Tres Monjitas indicó que, en caso de que la decisión del Fondo se considerara válida, solicitaba reconsideración de esa decisión para que se modificara a fines de autorizar el ajuste de la prima a partir del año póliza 1990-1991.

De igual forma, el 29 de noviembre de 2005, Vaquería Tres Monjitas presentó ante la Comisión una *Moción sobre Advertencia de Falta de Jurisdicción de la CFSE para Emitir Decisión y en su Defecto Apelación sobre Resolución del Administrador*, en la que solicitó la invalidación de la decisión emitida por el Fondo y notificada el 3 de noviembre de 2005, por razón de que esa decisión se emitió sin jurisdicción.

La Comisión acogió el escrito de Vaquería, emitió una resolución el 27 de diciembre de 2005, notificada el 19 de enero de 2006, mediante la cual le ordenó al Fondo enmendar de inmediato el Manual de Clasificaciones e Industrias y Tipos de Seguros para atemperarlo a la resolución dictada por la Comisión en el caso de *Suiza Dairy Corp.*, *supra*, aplicar esa resolución a Vaquería Tres Monjitas para los años póliza 1990-1991 en adelante y aplicar el crédito de esa reliquidación.

Oportunamente, el 8 de febrero de 2006, **el Fondo solicitó reconsideración de esta resolución.** Basó esta solicitud de reconsideración en que el 21 de julio de 2005, la Comisión le concedió al Fondo un término final e improrrogable para que emitiera su decisión y el Fondo emitió su decisión y se la notificó a Vaquería Tres Monjitas el 3 de noviembre de 2005, sin que esa parte hubiese presentado apelación alguna a esa fecha, por lo que esa decisión advino final y firme. Por esta razón, la Comisión no tenía jurisdicción cuando emitió su resolución de 27 de diciembre de 2005, notificada el 19 de enero de 2006, debido a que sólo una apelación de Vaquería Tres Monjitas dentro del término establecido en ley le hubiese dado jurisdicción sobre el caso a la Comisión.

El 14 de febrero de 2006, Vaquería Tres Monjitas se opuso a la solicitud de reconsideración del Fondo y señaló que el Fondo emitió su decisión fuera del término improrrogable concedido por la Comisión, por lo que la aludida resolución fue emitida sin jurisdicción y, por tanto, era nula. Finalmente, Vaquería Tres Monjitas indicó que la resolución de la Comisión de 27 de diciembre de 2005 se emitió con amplia jurisdicción y debía ser sostenida. Vaquería Tres Monjitas, también, hizo referencia al escrito que le sometió a la Comisión en el que le advertía la falta de jurisdicción del Fondo para emitir su decisión y, **en su defecto, le solicitaba que se considerara su escrito como una apelación de la resolución del Fondo.**

El 15 de febrero de 2006, la Comisión acogió la moción de reconsideración presentada por el Fondo y emitió a Vaquería Tres Monjitas una orden de mostrar causa por la cual no debía revocar la resolución de 27 de diciembre de 2005, notificada el 19 de enero de 2006.

El 23 de febrero de 2006, Vaquería Tres Monjitas presentó otro escrito de oposición a la reconsideración en el que rebatió lo señalado por el Fondo en cuanto a que esa parte no había presentado una apelación ante la Comisión respecto a la decisión emitida por el Fondo el 3 de noviembre de 2005. **A esos efectos, acompañó copia del escrito de apelación que presentó ante la Comisión.**

El mismo día que la Comisión acogió la moción de reconsideración y le emitió a Vaquería Tres Monjitas la orden de mostrar causa —el 15 de febrero de 2006—, la Comisión emitió una resolución en reconsideración mediante la cual: (1) **enmendó su resolución y le concedió al Fondo un término final e improrrogable de treinta días para emitir la decisión solicitada por Vaquería Tres Monjitas en su carta de 26 de febrero de 2003, en la que solicitó ajustar la clasificación de los choferes**; (2) dejó sin efecto la resolución de la Comisión notificada el 19 de enero de 2006; y (3) ordenó a la Secretaría que señalara una vista pública para ventilar el aspecto jurisdiccional. Esa resolución, sin embargo, se notificó dos y medio meses después, el 28 de abril de 2006.

No surge del expediente que la Comisión Industrial acogiera el escrito de apelación de Vaquería Tres Monjitas contra la resolución del Fondo de 3 de noviembre de 2005, pero tal parece que el apartado número uno que hemos subrayado en el párrafo que antecede atiende su preocupación principal. No hay, sin embargo, una disposición expresa de la apelación de Vaquería Tres Monjitas contra la resolución del Fondo que fue cuestionada por la parte recurrente.

Inconforme con la resolución en reconsideración emitida por la Comisión el 15 de febrero de 2006, Vaquería Tres Monjitas recurrió ante nos para solicitar la revisión administrativa de esa resolución. En su recurso, plantea que la Comisión cometió siete errores: (1) al dejar sin efecto la resolución notificada el 19 de

173

enero de 2006 —en la que la Comisión había determinado asumir jurisdicción—, basándose en que carecía de jurisdicción por no haberle dado primero al Fondo un término para resolver la controversia, al amparo de la Regla 9.4 de Procedimiento de la Comisión; (2) al no considerar las dos vistas públicas previas a la vista pública notificada el 21 de julio de 2005, en las cuales la Comisión le brindó al Fondo toda la "*oportunidad razonable*" que requiere el Art. 7 de la Ley 45, así como la Regla 9.4 de Procedimiento de la Comisión, y que el Fondo dejó vencer los términos sin cumplir con lo ordenado por la Comisión y sin justificar su incumplimiento; (3) al indicar que había errado en su resolución de 21 de julio de 2005, al asumir jurisdicción en el caso por demora y, a la vez, ordenarle al Fondo que emitiera su decisión sobre la solicitud de Vaquería Tres Monjitas; (4) al modificar su resolución de 21 de julio de 2005, cuando esa resolución había advenido final y firme, puesto que el Fondo no había solicitado reconsideración de esa resolución; (5) al dejar sin efecto la resolución de 21 de julio de 2005, sin darle a Vaquería Tres Monjitas la oportunidad de mostrar causa; (6) al emitir su resolución en reconsideración sin incluir determinaciones de hechos y conclusiones de derecho suficientes y completas; y (7) al no imponerle severas penalidades procesales y económicas al Fondo por su reiterado incumplimiento con las órdenes de la Comisión.

El Fondo compareció ante nos y presentó su alegato en el que señala que este Tribunal no tiene jurisdicción para considerar el recurso debido a que la resolución recurrida no es una resolución final, sino una resolución interlocutoria. Tiene razón.

## II

No está en duda que el caso de autos se rige por el Artículo 7 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 9, que dispone en parte:

*"En el caso de que el Administrador del Fondo del Estado demorare por más de un mes, sin causa justificada, la decisión de un caso completo sometido a su consideración, el obrero o el patrono que sean partes necesarias en dicho caso, o cualquier parte interesada podrá recurrir en queja ante la Comisión Industrial y obtener una orden de dicha Comisión compeliendo al Administrador para que decida el caso; y si fuere necesario, la Comisión podrá también ordenar al Administrador que remita el expediente del caso a dicha Comisión con el objeto de asumir jurisdicción sobre el mismo y decidirlo; **pero, antes de asumir jurisdicción en un caso y decidirlo, la Comisión dará al Administrador una oportunidad razonable para cerrar y decidir dicho caso.**"*

Véase la interpretación de este precepto en *Warner Lambert Ind. Dev. Corp. v. Comisión Industrial*, 111 D.P.R. 842, 843 (1982).

El Art. 24 de la misma ley, 11 L.P.R.A. sec. 25, provee el mecanismo procesal que debe seguirse para "*fijar y regular las primas por cada grupo de oficios o industrias y la clasificación de primas por cada grupo o industria la revisión de las primas aplicables a cada renglón de la industria*". *Warner Lambert Ind. Dev. Corp. v. Comisión Industrial*, 111 D.P.R., a la pág. 846, y *Montaner, Admor. v. Comisión Industrial*, 54 D.P.R. 55, 60-61 (1939). Tal proceso es más técnico y complejo que el que provee el Artículo 7 y tal parece que en cuanto a la industria a la que pertenece la parte recurrente tal determinación técnica y económica se hizo en la resolución de 1990. Lo que está en cuestionamiento es el ajuste de las primas pagadas por la parte recurrente para efectos de los créditos futuros que autoriza la ley.

Como se señaló en *Warner Lambert*, ya citado, a la pág. 844, el caso de autos "*trata de algo muy distinto: la reclasificación de la nómina de **un sólo patrono con el fin de corregir un alegado error**. La petición en este caso entraña un trámite administrativo rutinario, de carácter diferente al que motiva el Art. 24. De ocurrir demora en tal trámite, el patrono tiene derecho a utilizar el procedimiento que le brinda el Art. 7.*"

Lo que debemos determinar en esta ocasión es si la cuestión en disputa ha sido resuelta **definitivamente**

por la Comisión Industrial. Si no lo ha sido, procede respetar el proceso que se desarrolla en la agencia para su disposición final y abstenernos de ver el caso en sus méritos.

Es cierto que correspondía a la Comisión Industrial determinar, como cuestión de umbral, si el Fondo demoró de manera irrazonable la atención del caso, antes de dejar sin efecto todo lo resuelto previamente sobre ese particular, como bien alegó la parte recurrente. Y a juzgar por el tracto procesal del caso tal alegación pudo tener fundamento. No olvidemos que se trata de un reclamo rutinario sujeto a la agilidad propuesta por el legislador en el Artículo 7 de la ley habilitadora del Fondo. Sin embargo, tal parece que la Comisión Industrial, en el ejercicio de su amplia discreción como foro apelativo administrativo, acogió los argumentos del Fondo y le permitió un **plazo adicional improrrogable** para atender y resolver la cuestión planteada, en respuesta a la moción de reconsideración del Fondo. No tenemos criterios para resolver que en esta actuación hubo abuso de discreción por parte de la Comisión Industrial.

Notamos, sin embargo, que en medio de la maraña procesal generada en el caso, la Comisión no atendió expresa ni completamente la apelación presentada por la parte recurrente contra el remedio parcial que le concedió el Fondo en la resolución de 3 de noviembre de 2005, remedio que, a su juicio, es inconsistente con la resolución de 1990 que fijó las primas para toda la industria de elaboración de leche. Incluso, es posible que la determinación de enviar la cuestión nuevamente al Fondo pudo convertir en académico el reclamo en apelación, pues la Comisión le ordenó al Fondo que revisara los méritos de la reclamación, según peticionado por la recurrente.

Por lo expresado, en el caso de autos, la resolución recurrida no es una resolución final de la Comisión, porque no resolvió de forma completa y final la reclamación de Vaquería Tres Monjitas, sino que le ordenó nuevamente al Fondo que evalúe los méritos de la solicitud de la recurrente y que emita su decisión sobre esa reclamación en un término final e improrrogable. También ordenó la celebración de una vista pública para dilucidar un aspecto jurisdiccional del proceso.

El Art. 4.006, de la Ley de la Judicatura del Estado Libre Asociado de 2003, Ley 201 de 22 de agosto de 2003, 4 L.P.R.A. sec. 24y (Supl. 2006), establece en su inciso (c) la competencia del Tribunal de Apelaciones. A esos efectos, dispone que ese foro conocerá mediante recurso de revisión judicial, que se acogerá como cuestión de derecho, las decisiones, órdenes y **resoluciones finales** de organismos o agencias administrativas. *Ofic. Proc. Paciente v. Aseg. MCS*, res. el 22 de septiembre de 2004, 163 D.P.R.__ (2004), **2004 J.T.S. 160**, a la pág. 247.

Por su parte, la Sec. 1.3 de la Ley de Procedimiento Administrativo Uniforme, Ley 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2102 (Supl. 2005), define orden o resolución como *"cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas, o que imponga penalidades o sanciones administrativas, excluyendo órdenes ejecutivas emitidas por el Gobernador"*. Esa sección define, a su vez, una orden o resolución parcial como *"la acción agencial que adjudique algún derecho u obligación que no ponga fin a la controversia total sino a un aspecto específico de la misma"*.

A pesar de que la Ley de Procedimiento Administrativo Uniforme no define el término *"orden o resolución final"*, ésta contiene una descripción de lo que tiene que incluir una *"orden o resolución final"*. A esos efectos, la ley requiere que se incluyan determinaciones de hechos y las conclusiones de derecho de la decisión y la advertencia del derecho a solicitar una reconsideración. Sec. 3.14 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2164. *J. Exam. Tec. Méd. v. Elías et al.*, 144 D.P.R. 483, 489-490 (1997).

La Sec. 4.2 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2172 (Supl. 2005), establece que la revisión administrativa ante el Tribunal de Apelaciones se hará respecto a las órdenes o resoluciones finales, luego que el recurrente haya agotado *"todos los remedios provistos por la agencia o por el*

*organismo administrativo apelativo correspondiente*". El recurso de revisión se presentará ante el Tribunal de Apelaciones dentro del término de treinta días, contados a partir de la fecha del archivo en autos de la copia de la notificación de la **orden o resolución final de la agencia**. No serán revisables directamente a este Tribunal **las órdenes o resoluciones interlocutorias de una agencia**, esto es, aquéllas que se emitan en los procesos administrativos que se desarrollan por etapas. A esos efectos, esta misma sección provee que la disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia.

En síntesis, a base del mandato de ley, el Tribunal Supremo de Puerto Rico ha establecido que para que una orden emitida por una agencia pueda ser revisada ante el Tribunal de Apelaciones, deben cumplirse dos requisitos: (i) que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia, y (ii) que la resolución sea final y no interlocutoria. *Ofic. Proc. Paciente v. Aseg. MCS*, 2004 **J.T.S. 160**, a la pág. 247. Se entiende como final, la orden o resolución emitida por la última autoridad decisoria o adjudicativa de la agencia administrativa. *Bird Const. Corp. v. A.E.E.*, 152 D.P.R. 928, 935 (2000).

Por no recurrirse de una resolución final de la Comisión, sino de una determinación interlocutoria, carecemos de jurisdicción para considerar el recurso de revisión administrativa de esa decisión interlocutoria. De todos modos, la Comisión Industrial no ha emitido una resolución sobre los méritos de la apelación presentada por la parte recurrente. Aunque la cuestión de fijar las primas correspondientes a su choferes pudo haber quedado sujeta a la orden que dictó al Fondo para que hiciera los ajustes y reliquidara la cuenta de Vaquería Tres Monjitas, lo cierto es que no resolvió todos los señalamientos de esta parte contra la resolución apelada. Debe la Comisión evaluar el escrito apelativo y resolver de conformidad para que el foro judicial con autoridad revisora tenga los fundamentos de su determinación sobre esa gestión particular.

Reiteradamente se nos requiere que seamos celosos en la protección de nuestra jurisdicción. *Szendrey v. F. Castillo*, res. el 16 de enero de 2007, 169 D.P.R. __ (2007), **2007 J.T.S. 12**, a la pág. 705; *Carattini v. Collazo Syst. Analysis, Inc.*, res. el 3 de enero de 2003, 158 D.P.R. 345, 355 (2003). De carecer este tribunal de jurisdicción, lo único que puede hacer es así declararlo y desestimar o denegar el recurso. *Vega et al. v. Telefónica*, 156 D.P.R. 584, 595 (2002).

### III

Por los fundamentos expresados, se desestima el recurso de revisión por falta de jurisdicción para revisar una resolución interlocutoria de la agencia recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones