# 97 DTA 99

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ

HOSPITAL SAN ANTONIO
Proponente-Recurrido

HOSPITAL SAN CARLOS BORROMEO
Opositor-Recurrente

ESTADO LIBRE ASOCIADO DE PUERTO RICO
(DEPARTAMENTO DE SALUD)
Agencia

Núm. KLCE-96-00741

---

HOSPITAL SAN ANTONIO
Proponente-Recurrido

v.

HOSPITAL SAN CARLOS BORROMEO Opositor ESTADO LIBRE
ASOCIADO DE PUERTO RICO (DEPARTAMENTO DE SALUD)
Agencia-Recurrente

Núm. KLCE-96-00852

San Juan, Puerto Rico, a 30 de abril de 1997

Panel integrado por su presidente, el Juez Rossy García
y los Jueces Martínez Torres y Rodríguez García

Rodríguez García, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Los peticionarios en estos recursos consolidados, Hospital San Carlos Borromeo y el Departamento de Salud del Estado Libre Asociado, nos solicitan que revisemos la sentencia emitida por el Tribunal de Primera Instancia, Sala de Aguadilla, el día 24 de junio de 1996 revocando una resolución dictada por el Departamento de Salud (en adelante, *"el Departamento")*, denegando la concesión de un certificado de necesidad y conveniencia para la construcción del Hospital San Antonio en el municipio de Isabela - área de salud perteneciente a la subregión de Aguadilla El Hospital San Carlos le imputa al foro de instancia la comisión de los siguientes errores:

*"(1)Erró el Tribunal de Primera Instancia al revocar la resolución de la Secretaria de Salud denegando el CNC sin que se proveyera ninguna evidencia que impugnara las determinaciones de hecho*

*(2)Erró el Tribunal de Primera Instancia al sostener que el incumplimiento con uno de los criterios específicos y el perjuicio a los intereses públicos eran motivos suficientes para denegar el CNC.*

*(3)Erró el Tribunal de Primera Instancia al intervenir en consideraciones de política pública encomendadas al Secretario de Salud.*

*(4)Erró el Tribunal de Primera Instancia al no devolver el caso al Departamento de Salud en caso de que considerara inadecuados los fundamentos de denegación."*

Por su parte, el Departamento de Salud plantea que:

*"Erró el Tribunal de Instancia al determinar que la Secretaria de Salud abusó de su discreción al denegar un certificado de necesidad y conveniencia para que la parte demandante-recurrida, Hospital San Antonio, estableciera un hospital en el municipio de Isabela; además, determinó que la Secretaria de Salud no aplicó correctamente los criterios establecidos en el Artículo VI-1-A-1 del*

*Reglamento del Secretario de Salud Núm. 56."*

Por no haber sido presentada evidencia que derrote la presunción de regularidad y corrección de la resolución emitida por el Departamento de Salud, expedimos el auto de *certiorari* solicitado y revocamos la sentencia dictada por el Tribunal de Primera Instancia.

## I

El Dr. Eduardo Rodríguez Vázquez, presidente de Rocal Inc., presentó una propuesta ante el Departamento de Salud para la construcción de un hospital general (Hospital San Antonio) en el municipio de Isabela el 24 de junio de 1992. La propuesta fue archivada el 24 de diciembre de 1992 por no haberse presentado un estudio de viabilidad requerido por ley. El 15 de enero de 1993, el recurrido presentó el referido estudio y luego de varios incidentes procesales, y de la comparecencia y oposición del Hospital San Carlos a la construcción de dicha facilidad de salud, presentó un nuevo estudio de viabilidad en el mes de agosto de 1994 y enmendó su propuesta a los fines de reducir el número de camas de cuidado agudo general solicitadas a ciento cincuenta (150). ■

El oficial examinador, luego de escuchar a las partes, recomendó que no se expidiera el certificado de necesidad y conveniencia solicitado por el Hospital San Antonio. Fundamentó su recomendación en que la subregión de salud de Aguadilla cumplía con la norma reglamentaria de 2 5 camas de cuidado agudo general por cada mil (1,000) habitantes y que, además, el Hospital de Distrito de Aguadilla estaba operando por debajo del ochenta porciento (80%) de ocupación anual. Concluyó que el otorgamiento del certificado afectaría los servicios de salud existentes en la mencionada región de salud al aumentar el número de camas cuando existía un excedente. ■

Por otro lado, sostuvo que la construcción de un hospital tendría el efecto de disminuir el porciento de ocupación futuro del Hospital Regional de Aguadilla, afectándose así, el desarrollo ordenado de las facilidades de salud en dicha área Planteó además, que como parte de la reforma de salud desarrollada por el Departamento la concesión del certificado de necesidad y conveniencia limitaría sustancialmente las probabilidades de privatización del referido hospital regional toda vez que el porciento de ocupación de camas se reduciría tras el establecimiento de la facilidad de salud propuesta. *"Lo anterior constituye un escenario contrario a la política pública y planes de desarrollo actuales del Departamento en torno a la prestación de servicios médicos a la población médico-indigente en la Región de Salud de Aguadilla."* La Secretaria de Salud, Dra. Carmen Feliciano de Melecio, adoptó el informe del oficial examinador y denegó el certificado solicitado mediante una resolución fechada el 25 de octubre de 1995.

Inconforme con dicho dictamen, el recurrido presentó una moción de reconsideración alegando que la determinación del Departamento no estaba apoyada en evidencia sustancial. Planteó que contrario a lo señalado por el examinador, había una necesidad de camas en la región de salud de Aguadilla. Argumentó, además, que la verdadera razón para el actual porciento de ocupación del Hospital de Distrito no es la falta de demanda de pacientes sino los problemas de índole presupuestaria y operacional que confronta el Departamento. La referida moción fue rechazada de plano.

Así las cosas, el recurrido interpuso el 11 de diciembre de 1995 un recurso de revisión ■ alegando, en síntesis, que las determinaciones de hecho y las conclusiones de derecho eran totalmente erróneas por no estar apoyadas en evidencia sustancial ni estar basadas en la totalidad del expediente administrativo.

El Hospital San Carlos, por su parte, compareció a través de una moción en oposición y planteó que al emitir la resolución el Departamento ejerció su función de delinear la política pública en el ámbito de la prestación de servicios de salud. ■ Señaló que esta tarea requiere discreción y sólo es susceptible de intervención judicial cuando se ejerce de manera arbitraria o caprichosa. Sostiene además, que el recurrido no cuestiona el porciento de ocupación del hospital regional; su planteamiento es que discrepa de la aplicación en el presente caso de la disposición reglamentaria que exige que los hospitales del área tengan un ochenta porciento (80%) de ocupación anual, si a la luz de la nueva política en torno a la privatización de los hospitales públicos la misma se ha tornado inoperante.

El 24 de junio de 1996, el foro de instancia emitió una sentencia revocando la resolución dictada por el Departamento basándose en que la agencia abusó de su discreción al denegar el certificado. Concluyó que *"la actuación del Estado al fijar su política pública sobre los sistemas de salud, ha tornado inoperante, en el presente caso, el criterio del ochenta porciento (80%) de ocupación requerido en las facilidades existentes en el área para considerar el establecimiento de un nuevo hospital".* Dispuso que el porciento de ocupación del Hospital de Distrito no puede ser utilizado para penalizar al Hospital San Antonio, *"pues de no existir competencia en estos momentos entre la facilidad del Estado y la facilidad propuesta se debe al cambio de política pública..."* Afirmó que hay una clientela en dicho sector que necesita ser atendida y *"que no puede esperar hasta tanto el Estado se pueda deshacer del Hospital Subregional de Aguadilla".*

El Departamento, por su parte, presentó una moción de reconsideración planteando que la concesión de un certificado de necesidad y conveniencia conlleva no sólo un permiso para operar una facilidad de salud, sino la planificación del desarrollo de los servicios de salud en el área concernida. Dicha adjudicación conlleva la formulación de política pública. Si la Secretaria de Salud denegó el certificado debido a que no se cumplió con el requisito reglamentario de que todos los hospitales en dicha área tuvieran una ocupación anual de ochenta porciento (80%) y que, a su vez, la propuesta no coincidía con la necesidad actual y proyectada que tiene la población en esa área, en ausencia de prueba que derrote la presunción de corrección y legalidad de dicha decisión, el tribunal debió confirmar el dictamen de la agencia. La referida moción fue rechazada de plano.

Inconforme con la determinación del foro de instancia, los recurrentes Hospital San Carlos y el Departamento de Salud interpusieron en tiempo los presentes recursos de *certiorari* alegando que la resolución del Departamento descansó en la imposibilidad del recurrido de cumplir con uno de los tres criterios específicos establecidos por reglamento para poder establecer un hospital (el criterio de ochenta porciento (80%) de ocupación de todas las facilidades existentes), y la incompatibilidad de la propuesta con la política pública pautada por el Departamento. Sostuvo que el Departamento cuenta con la experiencia y la discreción para fijar su política pública a través del proceso de adjudicación Señaló que en ese sentido, erró el foro de instancia al intervenir de manera impermisible al hacer valuaciones de política pública que contradicen las del Departamento de Salud - organismo encomendado por ley a dirigir dicha política.

El 21 de agosto de 1996, emitimos una resolución y orden concediéndole a la parte recurrida un término de veinte (20) días para que mostrara causa por la cual no debíamos revocar la sentencia emitida por el tribunal de instancia. Dicha parte compareció y solicitó una prórroga debido al paso del huracán Hortensia. Mediante una resolución de 20 de septiembre de 1996 consolidamos ambos recursos y le concedimos hasta el 1ro. de octubre de 1996, fecha en que la parte recurrida presentó su escrito.

## II

La Ley Núm. 2 de 7 de noviembre de 1975, según enmendada, 24 L.P.R.A sec. 331 *et seq*, establece que ninguna persona podrá construir una facilidad de salud 4 sin antes haber obtenido un certificado de necesidad y conveniencia otorgado por el Secretario de Salud. ■

Dicha ley delegó en el Secretario de Salud la autoridad y discreción necesarias para asegurar la planificación y desarrollo ordenado de las facilidades y servicios de salud. Asimismo, el Secretario velará que los servicios se presten en aquellos núcleos poblacionales en que sean necesarios. A su vez, expedirá el aludido certificado - luego de haber determinado la necesidad y conveniencia pública de la facilidad o servicio de salud propuesto - si el establecimiento de la nueva facilidad de salud no afecta indebidamente los servicios existentes. Véase la Exposición de Motivos de la Ley Núm. 2, *supra*, según fue enmendada por la Ley Núm. 16 de 19 de septiembre de 1983, Leyes de Puerto Rico, 1983, págs 403-404.

El Artículo 3 de la Ley Núm. 2 antes citada, *supra*, sec. 334b, dispone que el Secretario de Salud establecerá mediante reglamento los criterios que serán tomados en consideración al momento de evaluar una solicitud de un certificado de necesidad y conveniencia. Este artículo indica que entre dichos criterios el Secretario incluirá, entre otros, los siguientes:

*"(1)La relación entre la transacción para la cual se solicite el certificado y el plan de desarrollo de servicios a largo plazo, si alguno, del solicitante.*

*(2)La necesidad actual y proyectada que tiene la población a ser afectada por la transacción contemplada de los servicios que se proveerán mediante la misma.*

*(3)La existencia de alternativas a la transacción para la cual se solicita el certificado o la posibilidad de proveer los servicios contemplados de manera más eficiente o menos costosa que la propuesta por el solicitante.*

*(4)La relación entre el sistema de salud operante en el área y la transacción propuesta.*

*............".*

A su vez, el Artículo 22, *supra*, sec. 334j, le ordena al Secretario promulgar un reglamento que tendrá fuerza de ley para establecer todo lo relacionado con las solicitudes de certificado de necesidad y conveniencia. En virtud de dicho mandato, se aprobó el Reglamento del Secretario de Salud Núm. 56 el 14 de agosto de 1986.

El Artículo II del Reglamento Núm. 56, *supra*, señala que aplicará a toda persona que proyecte establecer una nueva facilidad de salud. De igual forma, la definición del término facilidades de salud incluye, al igual que el artículo 1 de la ley, a los hospitales. El Artículo V del referido reglamento establece guías generales para evaluar las solicitudes. Entre dichas guías se encuentran los criterios mencionados en el Artículo 3 de la ley. Se tomarán en cuenta al momento de evaluar la solicitud además, la relación de la acción propuesta con los planes estatales de salud aprobados, con el plan anual propuesto, y los factores que afecten la competencia en la oferta de servicios de salud que esté bajo la consideración del Departamento.

Por otro lado, conjuntamente con los criterios generales del Artículo V, el reglamento dispone una serie de criterios específicos que serán utilizados al evaluar la solicitud de un certificado de necesidad y conveniencia. Cuando la propuesta no cumpla con uno o más de los criterios aplicables, el certificado podrá ser denegado. Véase Artículo VI.

El Artículo VI, además, en lo referente a los hospitales generales dispone:

*"1- Hospital General*

*1- Se considerará una norma de 2.5 camas de cuidado agudo general por cada 1,000 habitantes.*

***2- No se establecerá hospital alguno a menos que los establecidos en el área de servicios de salud estén operando en un 80% de ocupación anual.***

*3- La facilidad propuesta no debe estar a más de 30 minutos mediante transportación por automóvil de la población primaria a ser servida."* [Énfasis nuestro.]

Cabe recalcar además, que tanto la Ley Núm. 2, *supra*, sec. 334f-7 y el Artículo X del Reglamento Núm. 56, *supra*, señalan que las determinaciones de hecho del Secretario de Salud sostenidas por evidencia serán concluyentes.

En primer lugar, comenzamos por resolver que el Departamento concluyó erróneamente que en la región de Aguadilla se cumplía con el criterio de 2.5 camas por cada mil (1,000) habitantes (criterio específico Núm. 1 en relación con el establecimiento de un hospital general). [6] Véase Artículo VI. No obstante, dicho error no conlleva la revocación de la resolución emitida por el Departamento.

En segundo lugar, el Hospital San Antonio cumplió con el tercer criterio específico del referido artículo pues la población primaria a ser servida tendría acceso mediante automóvil a la facilidad propuesta en treinta (30) minutos o menos. Sin embargo, en cuanto al segundo criterio dispuesto en el Artículo VI del Reglamento Núm. 56, *supra*, --que resulta ser la médula de la controversia que nos

ocupa-- uno de los hospitales del área, el Hospital de Distrito de Aguadilla, estaba operando por debajo de un ochenta porciento (80%) de ocupación anual. Por consiguiente, la propuesta de la parte recurrida no cumplió con uno de los criterios específicos del reglamento.

En atención a esta situación, y en virtud de lo dispuesto en el Artículo VI, el Departamento a través de una resolución de 25 de octubre de 1995 denegó el certificado de necesidad y conveniencia solicitado por el Hospital San Antonio.

Resolvió que toda vez que el Hospital de Distrito tenía un porciento de ocupación menor al ochenta porciento (80%), conceder el certificado solicitado afectaría los servicios de salud existentes en la región de Aguadilla al aumentar sustancialmente el número de camas disponibles cuando, en realidad, existía un excedente de éstas. Entendió que como consecuencia del porciento de ocupación del hospital estatal habían camas suficientes (Además de haber concluido que se cumplía con la norma de 2.5 camas por cada mil (1,000) habitantes). Indicó además, que la construcción de un nuevo hospital afectaría negativamente el porciento de ocupación futuro del Hospital de Distrito. De esta forma, concluyó que la construcción propuesta afectaría el desarrollo ordenado de las facilidades de salud en dicha área. Por otro lado, señaló que la concesión del certificado limitaría sustancialmente las posibilidades de privatización del referido hospital, y en consecuencia, esto sería contrario a la política pública y a los planes de desarrollo del Departamento de Salud.

La parte recurrida Hospital San Antonio, por su parte, alegó que el criterio de ochenta porciento (80%) se tornó inoperante como consecuencia de la política pública plasmada en la Ley Núm. 72 de 7 de septiembre de 1993, conocida como la *"Ley de la Administración de Seguros de Salud de Puerto Rico",* 24 L.P.R.A. sec. 7001 *et seq.* Planteó que la verdadera razón para el bajo porciento de ocupación del hospital estatal no es la falta de demanda de pacientes sino los problemas de índole presupuestaria y operacional.

Mediante sentencia de 24 de junio de 1996, el foro de instancia acogió el planteamiento de la parte recurrida. Dispuso que existía una clientela en el área de Aguadilla que necesita ser atendida y que no se podía esperar hasta tanto el Estado *"se pueda deshacer del Hospital Subregional de Aguadilla".* ■ Concluimos que dicho foro se excedió en su encomienda de revisión judicial de una decisión de un organismo administrativo.

Es doctrina reiterada en el derecho administrativo que los procedimientos y las decisiones de los organismos administrativos gozan de una presunción de regularidad y corrección que debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. *Maisonet v. F.S.E.,* 142 D.P.R. ___ (1996), **96 J.T.S. 169,** a la pág. 454; *Fac. C. Soc. Aplicadas Inc. v. C.E.S.,* 133 D.P.R. ___ (1993), **93 J.T.S. 88,** a la pág. 10783; *Henríquez v. Consejo Educación Superior,* 120 D.P.R. 194, 210 (1987); *Murphy Bernabe v. Tribunal Superior,* 103 D.P.R. 692, 699 (1975). En atención a este principio, los tribunales no deberán alterar las determinaciones de hecho de una agencia si éstas se fundamentan en evidencia sustancial que surja del récord administrativo considerado en su totalidad. Sec. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la *"Ley de Procedimiento Administrativo Uniforme"* (LPAU), 3 L.P.R.A. sec. 2175; Fac. C. Soc. Aplicadas, Inc., *supra,* a la pág. 10783. Véanse además, *Misión Industrial de P.R. Inc., y otros v. Junta de Planificación de P.R. y A.A.A.,* Opinión de 21 de marzo de 1997, **97 J.T.S. 34,** a las págs. 728-729; *García Oyola v. Junta de Calidad Ambiental,* Opinión de 21 de febrero de 1997, **97 J.T.S. 25,** a la pág. 662; *Metropolitana S.E. v. A.R.P.E.,* 138 D.P.R. ___ (1995), **95 J.T.S. 39,** a la pág. 767; *Asoc. Drs. Med. Cui. Salud v. Morales,* 132 D.P.R. ___ (1993), **93 J.T.S. 12,** a la pág. 10349; Una evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Hilton Hotels v. Junta de Salario Mínimo,* 74 D.P.R. 670, 687 (1953).

Por otro lado, el grado de especialización de los organismos administrativos nos merece gran consideración y respeto. Es por ello que cuando se impugnan sus decisiones los tribunales deben limitarse a indagar si la agencia actuó de manera arbitraria, ilegal o en forma tan irrazonable que su actuación constituyó un abuso de discreción. *San Vicente v. Policía de P.R.,* 142 D.P.R. ___ (1996), **96 J.T.S. 148,** a la pág. 332; *Fuertes v. A.R.P.E.,* 134 D.P.R. ___ (1993), **93 J.T.S. 165,** a la pág. 11385; *Agosto Serrano v. F.S.E.,* 132 D.P.R. ___ (1993), **93 J.T.S. 37,** a la pág. 10510; *Murphy*

*Bernabe, supra*, a la pág. 699. De otra parte, la interpretación administrativa de una ley por el funcionario encargado de ponerla en vigor merece deferencia, siempre que dichas interpretaciones sean razonables y consistentes con el propósito legislativo. *Maisonet, supra*, a la pág. 454; *Ríos Colón v. F.S.E.,* 139 D.P.R. ___ (1995), **95 J.T.S. 133,** a la pág. 140; *Com. Seguros P.R. v. Gen. Accident Ins. Co.,* 132 D.P.R. ___ (1993), **93 J.T.S. 10,** a la pág. 10334; *Srio. D.A.C.O. v. J. Condóminos C. Martí,* 121 D.P.R. 807, 819 (1988). Además, una agencia administrativa viene obligada a observar estrictamente sus propios reglamentos. *Cotto v. Depto. de Educación,* 138 D.P.R. ___ (1995), **95 J.T.S. 79,** a la pág. 973.

Estos principios, sin embargo, no otorgan grado alguno de inmunidad a la actividad administrativa. No obstante, esto no significa que los tribunales habrán de intervenir para juzgar la sabiduría de una determinación de política pública que le corresponde hacer a las ramas ejecutiva y legislativa. *Misión Industrial de P.R. Inc.. y otros, supra,* a la pág. 728. La función central de la revisión judicial es asegurarse que la agencia actuó dentro del marco del poder delegado y de forma consistente con la política legislativa. *Miranda v. C.E.E.*, 141 D.P.R. ___ (1996), **96 J.T.S. 137**, a la pág. 235.

En el caso ante nuestra atención, el Departamento de Salud es el organismo creado por ley para proteger los intereses y el bienestar de la ciudadanía en un área tan importante como la salud. Dentro de la ancha encomienda de planificación integral, la rama legislativa delegó con normas amplias y generales un poder de reglamentación que le permitiese al Departamento una gran discreción en el desarrollo y ejecución de la política pública sobre salud. Véase la Ley Núm. 2, *supra*. De ahí que el Artículo 22 de la ley, *supra*, le confiere la facultad para adoptar un reglamento fijando todo lo relacionado con las solicitudes de necesidad y conveniencia.

A través del proceso de reglamentación, el Departamento tiene la encomienda de planificar los servicios de salud y trazar la política pública al respecto. *Ruiz Hernández v. Mahíques,* 120 D.P.R. 80, 87 (1987). Por esta razón, el solicitante de un certificado debe demostrar que existe la necesidad de la facilidad de salud propuesta y la conveniencia pública de establecerla en esa región. *Id.*

La Ley Núm. 2, *supra*, es específica al requerir que el reglamento establezca los criterios para expedir o denegar un certificado de necesidad y conveniencia. Sólo le indica en el Artículo 3, *supra*, unos criterios generales que, a su vez, forman parte del Artículo V del referido Reglamento. Si el estatuto regula meramente lo principal, es evidente entonces que el legislador tuvo el propósito de que fuera la agencia misma, a través de su experiencia y especialización, quien determine cuándo se debe conceder un certificado.

Al evaluar una solicitud de un certificado de necesidad y conveniencia, el Departamento considerará tanto los criterios generales como los específicos (Artículo VI).

Al evaluar la solicitud del Hospital San Antonio, determinó que la misma debía denegarse pues el Hospital de Distrito de Aguadilla tenía un porciento de ocupación anual menor al ochenta porciento (80%) requerido por el reglamento. Actuó correctamente el Departamento.

El Artículo VI del Reglamento Núm. 56 dispone que *"[n]o se establecerá hospital alguno a menos que los establecidos en el área de servicios de salud estén operando en un 80% de ocupación anual".* [Enfasis nuestro.] Este requisito -que forma parte de los criterios específicos aplicables cuando se solicita establecer un hospital general- utiliza un lenguaje imperativo y mandatorio que no da lugar al ejercicio de discreción por parte del Secretario de Salud. El Departamento venía obligado a observar estrictamente su propio reglamento. Cotto, *supra*, a la pág. 973.

Como ya mencionáramos, la parte recurrida planteó que el criterio antes mencionado era inoperante. Argumentó que la política pública de privatización de las facilidades de salud era la causa del bajo nivel de ocupación del hospital estatal. (Obsérvese que el Hospital San Antonio no cuestiona la determinación de que no hay un ochenta porciento (80%) de ocupación.) Señaló, además, que las determinaciones de hecho y las conclusiones de derecho eran totalmente erróneas al no estar sustentadas por evidencia sustancial que surja de la totalidad del récord administrativo. Sobre estos señalamientos, sin embargo, no vemos en los documentos ante nuestra atención prueba que los apoye.

Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte que impugna la decisión administrativa demuestre que existe *"otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada... y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración."* Metropolitana S.E., *supra*, a la pág. 767.

De conformidad con esta norma, cuando la parte recurrida cuestionó judicialmente la denegatoria del certificado, era deber del tribunal de instancia remitirse a la totalidad del expediente administrativo y examinarlo con el sólo fin de determinar si el mismo era suficiente para sostener las determinaciones adoptadas por el Departamento en su resolución y que éste ejerció razonablemente su discreción. A tenor con dichos factores, surge claramente que la sentencia emitida por el foro de instancia fue incorrecta.

Dicho foro se excedió en su función revisora y sustituyó la interpretación de la agencia por su propio criterio. Formuló evaluaciones de política pública que contradicen las del Departamento - organismo con el conocimiento especializado. ■ Reiteramos que la discreción sólo es susceptible de intervención judicial cuando se ejerce de manera arbitraria, caprichosa o fraudulenta. *Cardona v. Comisión Industrial,* 79 D.P.R. 672, 676 (1956).

El Departamento tiene la función de velar por el fiel cumplimiento de la política pública y los requisitos procesales y sustantivos contenidos en la ley y los reglamentos aprobados a su amparo. A la luz de esta función, sostuvo que la construcción de un nuevo hospital en la región de Aguadilla no es necesaria al haber un excedente de camas en vista del porciento de ocupación del hospital estatal; que se afectarían las facilidades de salud existentes, y que además, dicha propuesta era contraria a la reforma de salud, y por consiguiente, contraria a la política pública que el Departamento está encargado de poner en vigor.

Cabe destacar además, que la Ley Núm. 2, *supra*, establece un procedimiento administrativo de naturaleza formal, el cual ofrece garantías para asegurar que dicho proceso se lleve a cabo con pureza administrativa. Entre estas garantías de ley debemos mencionar que el Secretario de Salud debe hacer determinaciones de hecho que estén apoyadas por la evidencia. Véase el artículo 11, *supra*, sec. 334f-7. Ya hemos concluido que así lo hizo.

No habiendo una actuación arbitraria, ilegal o irrazonable de parte del Departamento de Salud al denegar el certificado de necesidad y conveniencia al Hospital San Antonio, y no siendo los tribunales los llamados a juzgar la sabiduría de una determinación de política pública, revocamos la sentencia emitida por el Tribunal de Primera Instancia, Sala de Aguadilla, el 24 de junio de 1996. ■

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 99

**1.** La propuesta original solicitaba autorización para doscientas diez (210) camas

**2.** Interpretó que el bajo porciento de ocupación del hospital estatal tenía como consecuencia el que hubiese un excedente de camas.

**3** El recurso fue presentado en el Tribunal de Primera Instancia, Sala de San Juan, y luego fue trasladado a la Sala de Aguadilla.

**4.** La definición del término facilidades de salud incluye a los hospitales. Véase el Artículo 1 de la Ley Núm. 2, *supra*, sec. 334.

**5.** La referida ley define el término certificado de necesidad y conveniencia de la siguiente forma:

*"Sec. 334. Definiciones*

*(e) Certificado de necesidad y conveniencia Documento emitido por el Secretario de Salud autorizando a una persona a llevar a cabo cualquiera de las actividades cubiertas por las secs. 334 a 334j de este título, certificando que la misma es necesaria para la población que va a servir y que no afectará indebidamente los servicios existentes, contribuyendo así al desarrollo ordenado y adecuado de los servicios de salud en Puerto Rico*

*(f).........."*.

**6.** La población de dicha región asciende a 231,352 habitantes. Tomando en consideración el criterio reglamentario de 2.5 camas por cada mil (1,000) habitantes, el total de camas ascendería a 578.38. El Hospital San Carlos cuenta con setenta y dos (72) camas y solicitó treinta y seis (36) adicionales.

Mediante una resolución de 2 de octubre de 1995 se concedió el certificado para la expansión del Hospital San Carlos. La referida resolución fue objeto de un recurso de revisión que fue declarado no ha lugar mediante sentencia de 21 de junio de 1996. Se encuentra pendiente ante nos un recurso de *certiorari* para la revisión de dicha sentencia (*Centro de Diagnóstico y Tratamiento de San Sebastían Inc. v. Departamento de Salud Hospital; San Carlos Borromeo,* Núm. KLCE-96-00945). El Hospital de Distrito de Aguadilla, por su parte tiene una capacidad de doscientas treinta (230) camas:

**7.** Véase la pág. 5 de la sentencia emitida por el tribunal recurrido.

**8.** El tribunal de instancia concluyó que *"[l]a desvalorización de la propiedad pública a la que alude el Hospital San Carlos Borromeo y que alega se suscita al permitirse un nuevo hospital en un área en que el hospital público está desocupado no ha sido objeto de prueba. Además, nada impide que a dicha propiedad se le de un uso distinto al que se le dio inicialmente y que la estructura en cuestión pueda ser vendida por el estado, ya que el interés de este último es precisamente salirse de la prestación de los servicios médicos-hospitalarios permitiendo que grupos privados sean los que presten servicios, supeditado obviamente a que los mismos sean unos de calidad".*

**9.** El Departamento de Salud es la agencia con el peritaje necesario para examinar este asunto. Su experiencia y conocimiento sobre la materia aquí en controversia nos merece consideración y respeto.