# 2002 DTA 96

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I DE SAN JUAN, PANEL IV**

JOSE IVAN VALENTIN PEREZ, BETZAIDA NAVARRO ORTIZ Y LA
SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Apelantes

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO; POLICIA DE PUERTO RICO;
PEDRO TOLEDO, SUPERINTENDENTE, Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA
POR PEDRO TOLEDO Y FULANA DE TAL;
TENIENTE WILFREDO CORREA RUIZ Y OTROS
Apelados

Núm. KLAN-2001-01163

San Juan, Puerto Rico, a 9 de mayo de 2002

Panel integrado por su Presidente, el Juez Gierbolini,
y los Jueces Cordero y Rodríguez Muñiz

Rodríguez Muñiz, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 26 de noviembre de 2001, José Iván Valentín Pérez y Betzaida Navarro Ortiz (en adelante, los demandantes), presentaron recurso de apelación. Solicitan la revocación de la sentencia parcial emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 20 de junio de 2001. Mediante dicha sentencia, el tribunal de instancia desestimó la demanda en cuanto a Popular Leasing de Puerto Rico. ■ Solicitan, además, la revocación de la sentencia parcial emitida el 11 de septiembre de 2001, mediante la cual se desestimó la demanda con respecto al Estado Libre Asociado (en adelante, el ELA), y sus respectivos funcionarios. Ambas sentencias fueron archivadas en autos el 25 de septiembre de 2001 y depositadas en el correo el 26 de septiembre de 2001.

A continuación exponemos brevemente el trasfondo fáctico y procesal del caso.

## I

José Iván Valentín Pérez (en adelante, Valentín), se desempeñaba como agente de la Policía de Puerto Rico. El 21 de septiembre de 1998, el día en que el Huracán Georges azotó la Isla, éste recibió una orden del Teniente Wilfredo Correa Ruiz para que se personara al Cuartel General de la Policía de Puerto Rico y entregara las llaves de un vehículo de la Uniformada que había que trasladar a un lugar seguro. Mientras conducía su vehículo personal hacia el Cuartel General, Valentín tuvo un accidente de tránsito. Alegadamente, una ráfaga de viento levantó el vehículo y lo lanzó contra una valla de seguridad. Como consecuencia de dicho accidente, Valentín sufrió serias lesiones corporales y fracturas, así como la pérdida total de su vehículo de uso personal marca Ford, modelo F-150 de 1997. El ELA y la Policía de Puerto Rico son patronos asegurados bajo la Ley de Compensaciones por Accidentes de Trabajo, 11 L.P.R.A. sec. 1 *et.seq.*

Por estos hechos, el 6 de junio de 1999, los demandantes presentaron ante el Tribunal de Primera Instancia demanda en daños y perjuicios contra el ELA, la Policía de Puerto Rico y varios de sus oficiales, el Banco Popular de Puerto Rico y otros. En cuanto al ELA y a la Policía de Puerto Rico, Valentín alegó que éstos son responsables por los daños sufridos al obligarlo a efectuar labores de trabajo, a pesar de las inclemencias del tiempo. En cuanto a Popular Leasing de Puerto Rico (en adelante, Popular Leasing), Valentín alegó que era responsable por el arrendamiento de la unidad accidentada que falló en proteger su integridad física. En cuanto a la Ford International Business Development, Inc. (en adelante, Ford), alegó que era responsable por los defectos de seguridad en el vehículo, ya que éstos no protegieron la integridad física del demandante. La demanda no contiene alegaciones específicas en contra del Banco Popular de Puerto Rico.

Luego de varios trámites procesales, el 29 de marzo de 2000 y el 30 de marzo de 2000, los demandantes presentaron sendas mociones para que se diera por desistida la acción presentada en cuanto al Banco Popular de Puerto Rico y la Ford, respectivamente. El 13 de abril de 2000, se celebró una vista para discutir dichas mociones y mediante sentencia parcial de 11 de mayo de 2000, el tribunal aceptó el desistimiento, sin perjuicio, de las reclamaciones en contra del Banco Popular de Puerto Rico y la Ford. ■

El 1 de mayo de 2000, el ELA presentó una moción de sentencia sumaria solicitando la desestimación de la

acción presentada en su contra. El ELA alegó que no existía causa de acción en contra de la Policía de Puerto Rico, por ser dicha parte un patrono asegurado bajo la Ley de Compensaciones por Accidentes de Trabajo, *supra*. Dicha ley confiere a todo patrono asegurado inmunidad contra cualquier acción civil en daños causados como consecuencia de un accidente en el empleo.

Por su parte, el 7 de julio de 2000, Popular Leasing presentó moción de sentencia sumaria solicitando la desestimación de la acción presentada en su contra debido a que las cláusulas 7(c) y 10 del contrato de arrendamiento le eximían de responsabilidad por robo, pérdida o destrucción del vehículo.

El 13 de julio de 2000, los demandantes se opusieron a la moción de sentencia sumaria presentada por el ELA. Alegaron que los daños por los cuales se reclamaba se debieron a un acto intencional de los agentes de la Policía y que dichos actos intencionales estaban exceptuados de la aplicación del remedio exclusivo dispuesto en la Ley de Compensaciones por Accidentes del Trabajo. Alegaron, además, que había mediado negligencia crasa de parte de los agentes, situación en que tampoco aplicaba la inmunidad patronal. De igual forma, el 8 de agosto de 2000, los demandantes se opusieron a la moción de sentencia sumaria presentada por Popular Leasing. Los demandantes alegaron que no procedía la desestimación solicitada porque Popular Leasing había participado en la cadena de distribución del vehículo y respondía por los daños causados por el mismo.

El 20 de junio de 2001, el Tribunal de Primera Instancia emitió sentencia parcial mediante la cual desestimó la reclamación presentada en contra de Popular Leasing. El 11 de septiembre, el Tribunal de Primera Instancia emitió una sentencia sumaria desestimando la acción en cuanto al ELA y sus respectivos funcionarios. Ambas sentencias fueron archivadas en autos el 25 de septiembre de 2001 y depositadas en el correo el 26 de septiembre de 2001.

Inconforme con ambas sentencias, el 26 de noviembre de 2001, los demandantes presentaron escrito de apelación y solicitaron la revocación de las mismas. Alegaron que el tribunal de instancia cometió los siguientes errores:

*"Erró el Honorable Tribunal de Primera Instancia al desestimar la Demanda con respecto a los co-demandados Pedro Toledo, Fausto Morales y Wilfredo Correa Ruiz, toda vez que ninguno de estos [sic] ha comparecido una vez fue denegada la solicitud de desestimación por falta de notificación y el Honorable Tribunal ratificó la jurisdicción adquirida sobre ellos a través del emplazamiento. Los codemandados anteriores se encuentran en rebeldía con respecto a los procedimientos y, por tanto, los que no han comparecido a solicitar no puede surtirles efecto alguno conforme a Derecho.*

*Erró el Tribunal de Primera Instancia al desestimar la Demanda en contra de todos los co-demandados funcionarios de la Policía de Puerto Rico y el Estado Libre Asociado de Puerto Rico al aplicar el fundamento de la exclusividad del remedio del Artículo 20 de la Ley de Compensaciones a Obreros al caso de autos.*

*Erró el Tribunal de Primera Instancia al determinar que el demandante no alegó ni un sólo hecho específico que demostrara una intención real, concreta y deliberada de parte de los demandados de causarle un daño o la muerte al señor Valentín Pérez el 21 de septiembre de 1998.*

*Erró el Tribunal de Primera Instancia al no aquilatar el derecho constitucional del demandante con respecto a la seguridad del empleo de la Sección 16 de la Constitución de Puerto Rico, y el derecho reconocido a partir de la Ley de Salud y Seguridad en el Empleo y no disponer que este derecho excedía en importancia a la exención de responsabilidad del Artículo 20 de la Ley de Compensaciones a Obreros y que la aplicación de la exención a casos donde se actúa sin expectativa alguna de proteger el derecho a la seguridad en el trabajo es inconstitucional.*

*Erró el Tribunal de Primera Instancia al no considerar los documentos sometidos como parte de nuestra Moción en Oposición a Sentencia Sumaria del 15 de agosto de 2000. De dichos documentos surgen hechos no controvertidos que permitían que se enmendaran en su día las alegaciones contra Popular Leasing y el Estado Libre Asociado, así como los funcionarios demandados en su carácter individual. En particular la alegación 37 de la demanda, así como las imputaciones de conocimiento del Estado Libre Asociado y sus funcionarios de la inminencia del azote del fenómeno atmosférico y la intención de los funcionarios con respecto a la instrucción u orden emitida.*

*Erró el Tribunal de Primera Instancia al aplicar la doctrina de cosa juzgada a partir de la determinación de la Corporación del Fondo del Seguro del Estado para la aplicación de la cubierta al caso de autos, como impedimento para la reclamación de reparación de los daños causados al demandante a partir de las actuaciones de los demandados. El Honorable Tribunal no tuvo ante sí dicha determinación ni tampoco el Estado Libre Asociado, quien alegó su aplicabilidad ni sometió documento alguno para someter la determinación como hecho no controvertido.*

*Erró el Tribunal de Primera Instancia al determinar que la parte demandante no alegó que el vehículo fue objeto de una compraventa de producto defectuoso y en atención a ello desestimar la demanda.*

*Erró el Tribunal de Primera Instancia al determinar que "la imprudencia del demandante Valentín de aventurarse a la interperie sin resguardo en medio del huracán, forzado o no por su superior de empleo, afectó negativamente sus posibilidades de recobrar de Popular Leasing", y en atención a ello desestimar la Demanda.*

*Erró el Tribunal de Primera Instancia al desestimar la reclamación en contra de Popular Leasing al enfocar el caso como uno estrictamente de derecho contractual. Al así hacerlo, no tomó en cuenta los derechos del demandado como consumidor de un vehículo de motor que cumpliera con todos los requisitos de protección al conductor que las leyes federales imponen. El deber bajo tales estatutos del demandado Popular Leasing es de cerciorarse que los vehículos que revende y mercadea cumplan con los propósitos de la referida ley."*

El 14 de diciembre de 2001, Popular Leasing presentó su alegato. El 11 de febrero de 2002, el ELA presentó el suyo.

Por las razones que expondremos, confirmamos las sentencias apeladas.

## II

En primer término, discutiremos los errores concernientes a la causa de acción en contra del ELA y sus funcionarios. Esto es, procederemos a discutir el segundo, tercer y cuarto error señalados. En general, estos señalamientos se refieren al marco de inmunidad y a la exclusividad del remedio que cobija al patrono asegurado bajo la Ley de Compensaciones por Accidentes de Trabajo, *supra*.

La Ley de Compensaciones por Accidentes del Trabajo, *supra*, establece un esquema de seguro compulsorio cuya finalidad es proveer a los obreros que sufren alguna lesión o enfermedad que ocurra en el curso del trabajo y como consecuencia del mismo, un remedio rápido, eficiente y libre de las complejidades de una reclamación ordinaria en daños. *Cátala Meléndez v. Fondo del Seguro del Estado*, **99 J.T.S. 61**, página 894; *Pacheco Pietri vs. ELA*, 133 D.P.R. 907, 914 (1993).

Dicha Ley confiere al patrono asegurado inmunidad en cuanto a las acciones civiles en daños y perjuicios que los empleados lesionados pudieran presentarles. Si el patrono ha cumplido con su obligación legal de asegurar a sus empleados ante el Fondo del Seguro del Estado, de ordinario, no existe causa de acción en daños y perjuicios contra el patrono por el accidente del trabajo sufrido por ellos. El derecho de resarcimiento que tiene el empleado lesionado, enfermo o fallecido, frente al patrono asegurado a tenor con la ley, de ordinario, se limita al pago de la

compensación dispuesta en el estatuto administrado por el Fondo del Seguro del Estado, por lo que el empleado carece de causa de acción para demandar a su patrono por los daños y perjuicios sufridos. *Lebrón Bonilla v. ELA,* **2001 J.T.S. 150**, página 313; *Hernández v. Bermúdez & Longo, S.E.,* **99 J.T.S. 162**, página 284; *Santiago Hodge vs. Parke Davis Co.,* 126 D.P.R. 1, 8 (1990). Esto es, a cambio de la protección brindada por esta ley, los obreros renuncian a su derecho a instar una acción de daños y perjuicios contra el patrono asegurado que ocasionó los daños sufridos. *Vega Rodríguez v. Empresas Tito Castro, Inc.,* **2000 J.T.S. 153**, página 140; *Hernández vs. Bermúdez & Longo, S.E., supra,* página 285; *Cátala Méndez v. Pedro Soto Ríos, Administrador del Fondo de Seguro del Estado, supra,* página 894; *Martínez v. Bristol Myers,* **99 J.T.S. 5**, página 482; *Sociedad de Gananciales v. Royal Bank de P.R.,* 145 D.P.R. 178, 194 (1998).

No obstante, aun cuando un patrono esté asegurado, la inmunidad patronal conferida por la Ley de Compensaciones por Accidentes del Trabajo, *supra,* no aplica cuando las lesiones del obrero son producidas intencionalmente por el patrono, *Hernández v. Bermúdez & Longo, S.E., supra,* página 285; *Pachecho Pietri v. ELA, supra,* página 919; *Odriozola v. S. Cosmetic Dist. Corp.,* 116 D.P.R. 485, 501 (1985). Ahora bien, la conducta crasamente negligente no constituye excepción a la inmunidad patronal, al faltar en ella el elemento de intencionalidad. En estos casos, no existe causa de acción relacionada con la lesión ocurrida en el empleo contra un patrono asegurado, *"independientemente del grado de negligencia atribuible al patrono". Sociedad de Gananciales v. Royal Bank de P.R., supra,* página 195. En este sentido, el sólo incumplimiento por un patrono asegurado de la obligación legal impuesta por la Ley de Seguridad y Salud en el Trabajo de mantener condiciones seguras en el empleo no autoriza causa de acción alguna a favor de los obreros por un accidente de trabajo, ni afecta la inmunidad patronal. *Hernández v. Bermúdez & Longo, S.E, supra,* página 285. Con relación a la responsabilidad de compañeros empleados o supervisores, a éstos les cobija la inmunidad patronal *"cuando la alegada negligencia del co-empleado consista alegadamente en violentar el deber no delegable de la corporación de no proveer un lugar seguro de empleo... [El] oficial, agente o empleado será responsable por los daños sufridos por un compañero empleado cuando el acto negligente causante de los mismos sea distinto e independiente del deber del patrono de proveer un lugar seguro de empleo". Pacheco Pietri v. ELA, supra,* páginas 919-920.

De lo anterior se desprende que cuando un trabajador demanda en acción de daños y perjuicios a su patrono, hay que evaluar si el hecho, accidente, lesión, enfermedad o muerte alegado en una demanda civil, se encuentra comprendido dentro del marco de la inmunidad que confiere la Ley de Compensaciones por Accidentes del Trabajo, y si se ha reclamado o compensado el mismo de alguna manera en el Fondo del Seguro del Estado. *Lebrón Bonilla v. ELA, supra,* página 313.

El fundamento esbozado por los demandantes para que no se concediera el remedio de la desestimación de su acción judicial, según solicitado por el ELA, se circunscribe al argumento de que el accidente sufrido por Valentín se debió a actos intencionales por parte de su patrono. De esta forma, los demandantes arguyen que el ELA quedó desprovisto de la inmunidad patronal que goza todo patrono asegurado contra acciones judiciales incoadas por obreros o empleados accidentados en el curso de sus labores.

En la demanda incoada, los demandantes establecieron cuáles fueron las causas del accidente y los daños sufridos por ellos, según su mejor criterio. Los demandantes señalaron que los daños fueron ocasionados por la culpa y negligencia crasa de sus oficiales al impartir la instrucción con conocimiento de la peligrosidad de las condiciones atmosféricas. En específico, los demandantes alegaron que *"el Teniente Correa le indicó que necesitaban con urgencia las llaves de la camioneta Montero para moverla de lugar debido a que ésta corría peligro de recibir daños",* y que éste señaló que *"si él decidía no ir al cuartel, se atendría a las graves consecuencias que pudiera ocasionar la acción de negarse a ir".* Alegaciones números 7 y 9 de la demanda, página 217 del apéndice del escrito de apelación. Fue en el intento de cumplir con la misma que *"el fuerte viento del Huracán levantó el vehículo del demandante, descontrolando el mismo enviándolo contra las vallas de seguridad".* Alegación número 12 de la demanda, página 217 del apéndice del escrito de apelación.

Estas alegaciones no señalan actos intencionales específicos de parte del ELA dirigidos de forma deliberada a causar daños a sus empleados. Un acto es intencional, cuando su resultado y consecuencias fueron claramente anticipadas. Esto es, cuando la persona desea las consecuencias de su conducta. *Guerrido García v. UCB,* 143 D. P.R. 337, 352 (1997); *PFZ Props. Inc. vs. Gen. Acc. Ins. Co.,* 136 D.P.R. 881, 905 (1994). Aun tomando como cierta la voluntariedad del ELA de no garantizar un lugar de trabajo seguro al impartir la instrucción en cuestión, tal actitud patronal dista mucho de la intención de causar daño a sus empleados, necesaria para despojarlo de la inmunidad que le cobija como patrono asegurado. El mero conocimiento de la peligrosidad de la situación en el país no convirtió lo ocurrido en un acto intencional. Lo más que puede atribuirsele al ELA es negligencia en el desempeño de sus deberes.

Como parte de sus argumentos en el sentido de que el ELA quedó desprovista de su inmunidad patronal por haber incurrido en actos intencionales, los demandantes señalaron que el ELA incumplió las disposiciones de la Ley de Seguridad y Salud en el Trabajo. La Sección 25 de la Ley de Seguridad y Salud en el Trabajo, 29 L.P.R.A. sec. 361x, establece en parte:

*"(a) Cualquier patrono que intencional o repetidamente viole los requisitos de la sec. 361e de este título, cualquier norma, regla u orden en vigor a tenor con las secs. 361g, 361h, 361l, 361m, y 361n de este título, o de los reglamentos promulgados a tenor con las secs. 361 a 361aa de este título, podrá ser multado civilmente con una cantidad que no excederá de setenta mil (70,000) dólares por cada violación, pero nunca menor de cinco mil ($5,000) dólares por cada violación intencional."*

De una lectura de las secciones que recoge esta disposición, surge que la determinación de intencionalidad dentro del ámbito de dicho estatuto se refiere a la intención del patrono de infringir los requerimientos legales y reglamentarios establecidos para procurar un taller de trabajo libre de riesgos y no la intención de causar daño a los empleados, requerida para privar de su inmunidad a un patrono asegurado bajo la cubierta del Fondo del Seguro del Estado. Este último tipo de intención está ausente de las alegaciones contenidas en la demanda entablada, por lo que el ELA no quedó desprovisto de la inmunidad patronal que por disposición de ley ampara a todo patrono asegurado. Como ya hemos reseñado, está resuelto que el incumplimiento por un patrono asegurado de la obligación impuesta por ley de mantener condiciones seguras de empleo no autoriza causa de acción alguna a favor de los obreros por un accidente del trabajo, ni afecta la inmunidad patronal. La alegada omisión del ELA de proveer al demandante un lugar de trabajo libre de riesgos constituye, a lo sumo, una negligencia crasa de su parte al incumplir con los requisitos que la ley le impone. No estamos ante una conducta ilegítima o delictiva que excluiría la inmunidad patronal. En consecuencia, los demandantes solamente tienen el derecho al remedio de compensación exclusivo que ofrece la Ley de Compensaciones por Accidentes del Trabajo.

Por otra parte, en relación al planteamiento de constitucionalidad de la Ley de Compensaciones por Accidentes del Trabajo, nuestro Tribunal Supremo expresamente resolvió en *Cardona v. Comisión Industrial,* 79 D.P.R. 672 (1958), que dicho estatuto es constitucional. Dicha norma fue reiterada en *Cortés v. Comisión Industrial,* 85 D.P.R. 241 (1962), particularmente en cuanto a la reclamación de un derecho constitucional a la protección contra riesgos para la salud o integridad personal en su trabajo, 1 L.P.R.A. sec. 16. En cuanto al planteamiento relacionado con el derecho constitucional a la seguridad en el empleo, los demandantes no nos han puesto en condiciones de resolver este apuntamiento. Meramente se limitaron a expresarlo como error en la petición del recurso alegando que el tribunal de instancia no aquilató tal derecho constitucional, sin siquiera fundamentar sus alegaciones. Este Tribunal no considerará en apelación un apuntamiento señalado por los demandantes como error, sin que intenten siquiera demostrar en su recurso los fundamentos en que basa dicho error. Por tal razón, no podemos considerarlo. *Pueblo v. Rivera Alvila,* 97 D.P.R. 89, 91 (1969); *Rolón Marxuach v. Tribunal Superior,* 96 D.P.R. 662, 666 (1968); *Pueblo v. Cruz Collazo,* 95 D.P.R. 651, 659 (1968); *Pueblo v. Cortés,* 69 D.P.R. 344, 346 (1948); *Pueblo v. Ríos,* 67 D.P.R. 350, 354 (1947); *Pueblo v. Otero,* 67 D.P.R. 404, 414 (1947); *Pueblo v. Ramírez,* 50 D.P.R. 234, 271 (1936).

En su señalamiento de error número cinco, los demandantes indicaron que el tribunal de instancia no consideró ciertos documentos que, a su entender, demostraban la existencia de los actos intencionales por parte de los funcionarios del ELA. Dicho señalamiento cuestiona la apreciación que hiciera el tribunal de instancia de dichos documentos. En cuanto a la evaluación de la prueba documental, reconocemos que estamos en igual condición que el tribunal de instancia, *Trinidad García v. Chade*, **2001 J.T.S. 10** página 793. Sin embargo, los hechos esbozados por la propia parte demandante en su demanda demuestran la falta de intencionalidad en las actuaciones de los oficiales del ELA. Por lo que en ausencia de error manifiesto, prejuicio o parcialidad, no intervendremos con la determinación del tribunal de instancia. *Municipio de Ponce v. Autoridad de Carreteras,* **2001 J.T.S. 3**, página 658.

De igual forma, resulta improcedente el señalamiento de error número seis relativo a que el tribunal de instancia resolvió la reclamación amparado en la doctrina de cosa juzgada. Lo que el tribunal de instancia resolvió fue que habiéndose demostrado que el ELA era un patrono asegurado bajo la Ley de Compensaciones por Accidentes del Trabajo, le era aplicable la inmunidad contra acciones de daños y perjuicios por razón del accidente cubierto. Como señaláramos anteriormente, dicha ley establece un remedio de carácter exclusivo que *"crea una inmunidad legal de un patrono asegurado contra el ejercicio de cualquier otra acción; en otras palabras, se trata de inexistencia de causa de acción". Admor FSE v. Flores Hnos. Cement Prods.,* 107 D.P.R. 789, 794 (1978). Es decir, no se trata de que sea de aplicación la doctrina de cosa juzgada, sino de la inexistencia de causa de acción.

Por último, de los señalamientos de error concernientes al ELA, resta por atender el primer señalamiento de error. Los demandantes señalaron que no se debió desestimar la demanda con respecto a los co-demandados Pedro Toledo, Fausto Morales y Wilfredo Correa, debido a que luego de que se declarara no ha lugar una moción de desestimación presentada por ellos, éstos nunca comparecieron ni a solicitar la desestimación del pleito, ni se unieron a la moción de sentencia sumaria presentada por el ELA, razón por la cual se encuentran en rebeldía. Como ha quedado demostrado, estamos ante una reclamación en daños y perjuicios presentada en contra del ELA y varios funcionarios de la Policía, quienes estaban actuado en su carácter como tales en el curso de su trabajo y para su patrono. Establecido que el ELA es un patrono asegurado bajo la Ley de Compensaciones por Accidentes del Trabajo, dicha inmunidad como patrono estatutario se extiende a los empleados que en el curso de su trabajo y por razón del mismo, negligentemente causan daño a otro empleado. *Pacheco Pietri v. ELA, supra,* página 919, 920. Siendo así, y reconocida la inmunidad del patrono, no procedía una reclamación en contra de los oficiales del mismo por actuaciones en el curso y beneficio de éste. Contra éstos también había inexistencia de causa de acción en daños y perjuicios. Por lo que correspondía desestimar la demanda en cuanto a dichos funcionarios.

Los señalamientos de error siete, ocho y nueve son los concernientes a Popular Leasing. En ellos, los demandantes alegaron que Popular Leasing es responsable por los defectos en el vehículo Ford F-150, que era conducido por Valentín al momento del accidente, y cuestionan la imputación de imprudencia que el tribunal de instancia hizo a Valentín al aventurarse a conducir el vehículo en medio de un huracán. Además, imputan como error que el tribunal hubiera llegado a una determinación fundamentado única y exclusivamente en el derecho contractual.

El contrato de arrendamiento financiero es en esencia, una nueva forma de financiamiento. *Meyers Bros. v. Gelco,* 114 D.P.R. 116, 119 (1983). El mismo se particulariza por ser un negocio jurídico cuyo contenido está formado por varias declaraciones de voluntad, las cuales producen una relación jurídica y establecen los términos que la regulan. *CNA Casualty de Puerto Rico v. Torres Díaz,* 141 D.P.R. 27, 33 (1996). Esta relación contractual es generalmente una tripartita, en donde el arrendador es un intermediario financiero entre el proveedor y el usuario, a diferencia del arrendamiento operativo en donde el propio fabricante o suplidor es quien financia. *Meyers Bros. v. Gelco, supra,* a la página 120.

El tercer párrafo del Artículo 10 de la Ley Núm. 76 del 13 de agosto de 1994, conocida como la Ley para

Regular los Contratos de Arrendamiento de Bienes Muebles, 10 L.P.R.A. sec. 2401 *et seq.,* indica que *"[s]erá responsable el arrendador ante el arrendatario o ante terceros en el arrendamiento operativo cerrado únicamente de existir defectos de fábrica (product liability), saneamiento por vicios y garantías del producto."* Este párrafo establece la única excepción que hace al arrendador responsable frente al arrendatario por defectos de fábrica, vicios ocultos y garantías del producto. Ello se debe a que, de ordinario, el arrendador es un mero financiador del proceso y el proveedor es quien cumple las garantías en este tipo de contratos.

La diferencia estriba en la naturaleza del tipo de arrendamiento escogido. En el caso de los arrendamientos cerrados, el arrendatario tiene que entregar el bien mueble arrendado al finalizar el arrendamiento sin responsabilidad alguna. Art. 1(e), 10 L.P.R.A. sec. 2401(e). En estos casos, el arrendador, además de actuar como el financiador del bien mueble, actúa como titular del equipo antes, durante y después del arrendamiento, fundiéndose así la actividad de financiar con la de compra y arrendamiento del equipo. Por eso es justo que también se le exija que cumpla con las obligaciones que, de ordinario, se le transferirían al proveedor. Esto, sin embargo, es diferente en los casos de arrendamientos financieros abiertos, en donde el arrendador actúa como un mero financiador, dejando la actividad de compra y arrendamiento como actividades subsidiarias, *Meyers Bros. v. Gelco, supra,* página 124, y en donde, para convertirse en titular del bien arrendado, el arrendatario tiene como obligación pagar el valor residual al finalizar el arrendamiento. Art. 1(d), *supra* sec. 2401(d). En estos casos se da una mera intervención del arrendador, ya que su titularidad es básicamente incidental. El arrendador mantiene la titularidad del bien solamente antes y durante el arrendamiento, pues el arrendatario la adquiere al finalizar el mismo pagando el valor residual estipulado. Por tanto, es totalmente aceptable en estos casos que el arrendatario exija la responsabilidad por los daños ocasionados en el bien directamente al proveedor y no al arrendador que solamente hizo acto de presencia para financiar la unidad.

A diferencia de lo que los demandantes pretenden, el tribunal de instancia no erró al determinar que Popular Leasing no respondería por los defectos en el vehículo Ford F-150. Popular Leasing simplemente actuó como un mero intermediario financiero entre el proveedor y el usuario. Por tanto, no le es de aplicación la responsabilidad por productos defectuosos. ▮

Además, el contrato suscrito entre la co-demandante Betzaida Navarro y Popular Leasing titulado *"Vehicle Lease Contract"* dispone en su cláusula 7 (c) que: *"We are leasing the vehicle to you 'as is' and we have made no representation, guarantee or warranty, express or implied (including any implied warranty of merchantability or fitness for a particular purpose), regarding the vehicle. We disclaim all such warranties or guaranties of any kind. We agree to transfer to you all warranties, if any, made by the vendor to us".* Página 57 del apéndice del escrito de apelación. Según lo anterior, ambas partes acordaron que el vehículo se arrendaba *"as is"* sin garantías y mediante la transferencia al arrendatario de las garantías hechas por el vendedor del vehículo. Valga recordar la norma de derecho contractual a los efectos de que cuando los términos de un contrato son claros y no dejan dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. Los tribunales deben seguir la letra clara de un contrato, cuando ésta refleja la voluntad inequívoca de las partes. *Irizarry López v. García Cámara,* **2001 J.T.S. 164**, página 456; *Trinidad García v. Chade, supra,* página 792. Estos no deben hacer una interpretación de un contrato que quite efectividad a las cláusulas contractuales válidamente acordadas. *Caguas Plumbing, Inc. v. Continental Construction Corp.,* **2001 J.T.S. 169**, página 510. Ello en atención al principio de que un contrato tiene fuerza de ley entre las partes, por lo que se debe cumplir según lo pactado. *Master Concrete Corp. v. Fraya, S.E.,* **2000 J.T.S. 192**, páginas 455-456.

### III
Por las razones anteriormente expuestas, confirmamos las sentencias apeladas.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

1. El nombre correcto es Popular Leasing & Rental, Inc.

2. Surge del expediente que el 18 de agosto de 2000, el tribunal de instancia emitió otra sentencia parcial en la que se da por desistida la acción, sin perjuicio, en cuanto al Banco Popular de Puerto Rico.

3. La *"imprudencia"* de Valentín al conducir el vehículo, a pesar de las condiciones del tiempo, no altera el hecho de que Popular Leasing no es responsable por los alegados defectos. De existir los mismos, la acción sólo procede en contra del fabricante del vehículo y a éste corresponde levantar las defensas pertinentes.